CLERK'S OFFICE
A TRUE COPY
May 01, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❏ Original    ❏ Dupli[cate]

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information about the location of<br>561-451-5293 | )<br>)<br>)   Case No.        26-MJ-59<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___05/15/2026___ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___William E. Duffin, United States Magistrate Judge___.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for __30__ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:      05/01/2026 at 2:20 p.m.                    *William E. Duffin*
                                                                                        *Judge's signature*

City and state:      Milwaukee, Wisconsin              William E. Duffin, United States Magistrate Judge
                                                                                  *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1. Records and information associated with the cellular device assigned call number 561-451-5293 (referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber(s) Hector Guzman, that is in the custody or control of  T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way Parsippany, NJ 07054.

2. The Target Cell Phone.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from June 1, 2025 to present:

        i.   Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.   Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 18, United States Code, Sections 371, 1956, 2314, and 2315 and Title 8, United States Code, Section 1324(a)(1)(A)(iii) involving NOBUAKI WATAY and others known and unknown during the period of June 1, 2025 to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.



CLERK'S OFFICE
A TRUE COPY
May 01, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information about the location of 561-451-5293 | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.        26-MJ-59 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371, 1956, 2314,<br>and 2315; 8 U.S.C. 1324(a) | conspiracy to violate the laws of the United States; interstate transportation of stolen property; sale or receipt of stolen property; money laundering; and harboring an illegal alien |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

BRANDON AMERINE  Digitally signed by BRANDON AMERINE
Date: 2026.04.30 20:11:07 -05'00'

*Applicant's signature*

Brandon Amerine, Special Agent (FBI)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date:        05/01/2026

*Judge's signature*

City and state:   Milwaukee, Wisconsin

William E. Duffin, United States Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brandon Amerine, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 561-451-5293 (the "Target Cell Phone"), whose service provider is T-Mobile ("Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.  Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

3.  I am a Special Agent with the Federal Bureau of Investigation, and have been since May 2019. I am currently assigned to the Milwaukee Field Office's Homeland Security Task Force ("HSTF"). The primary mission of the HSTF is to identify, investigate, disrupt, and dismantle transnational criminal organizations and their associates operating in communities in and around the greater Milwaukee area. My responsibilities include the investigation of possible violations of

federal law, including weapons trafficking, narcotics trafficking, human trafficking, money laundering, conspiracy to commit offenses or to defraud the United States, interstate transportation of stolen goods, the sale and receipt of stolen goods, bank fraud, and aggravated identity theft.

4. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5. As an FBI Special Agent, I have participated in a wide variety of federal investigations and debriefed or participated in the debriefings of defendants, informants, and witnesses. I have participated and conducted physical and electronic surveillance, analyzing telephone toll information obtained through subpoenas, analyzing information obtained through court-ordered pen registers and trap and trace intercepts, overseeing the activities of and debriefing informants, and executing arrest and search warrants. I have also conducted federal investigations into the use of fraudulent identifications, bank fraud, money laundering, and wire fraud, as well as robberies, burglaries, and other violent crimes. Based on my training and experience, I am familiar with the use of cellphones and other forms of technology to communicate, coordinate, and facilitate the commission of these crimes and to hold and store data associated with the fruits, evidence, and instrumentalities of these crimes, including location information, photographs, and communications kept on these devices.

6. This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly

participated in this investigation, and with whom I have had regular contact regarding this investigation.

7. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 371, 1956, 2314, and 2315 and Title 8, United States Code, Section 1324(a)(1)(A)(iii),(v)(I-II) have been committed, are being committed, and will be committed by NOBUAKI WATAY and others known and unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

9. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**<u>PROBABLE CAUSE</u>**

10. The United States, including the Federal Bureau of Investigation ("FBI"), Homeland Security Investigations ("HSI"), and Internal Revenue Service ("IRS"), working together as part of the Milwaukee Homeland Security Task Force ("HSTF"), are jointly conducting an investigation into a South American Theft Group ("SATG") based out of Santiago, Chile with co-conspirators based in the greater Miami and Gainesville, Florida areas. One of those co-

conspirators is NOBUAKI WATAY, who has facilitated multiple residential burglaries committed in the Eastern District of Wisconsin, Western District of Wisconsin, and District of Minnesota, and the interstate transportation of property stolen during those burglaries, by other co-conspirators, including but not limited to LUCIANO ALEXIS SILVA CIFUENTES ("CIFUENTES"), ENJERBET ALEJANDRO ROJAS SILVA ("SILVA"), LEANDRO FELIPE PINO URIBE ("URIBE"), ANDRES IGNACIO ISAAC MELITA ESPARZA ("MELITA"), and JORGE DARIO MARTINEZ ARENEDA ("ARENEDA"), some of whom were aliens in the United States, in 2024 and 2025.

11.     As described below, the Milwaukee HSTF has identified approximately 15 different burglaries and attempted burglaries across Wisconsin, Minnesota, and Florida with an estimated loss of approximately $1 million committed by this SATG. WATAY is a Venezuelan national living in Gainesville, Florida. More specifically, WATAY is a main point of contact who has booked Airbnb rental properties for the burglary crews, posted bail funds, and facilitated financial transactions with other co-conspirators using his personal and business bank accounts, many of such actions conducted via the Target Cell Phone.

**Waukesha County Investigation**

12.     On December 11, 2025, the Waukesha County Sheriff's Department arrested LUCIANO ALEXIS SILVA CIFUENTES ("CIFUENTES"), ENJERBET ALEJANDRO ROJAS SILVA ("SILVA"), and LEANDRO FELIPE PINO URIBE ("URIBE"), following an investigation into a burglary that had occurred on October 17, 2025 at W2XX N3XXX[1] Lost Creek Court, Delafield, Wisconsin, in which the victims reported the loss of approximately 100 pieces of jewelry, with an estimated value of $175,000 to $200,000. The home is located at the end of a

---

1 The full addresses of the residences listed in the affidavit are known to law enforcement, but are not included in full to protect the identity and safety of the victims.

cul-de-sac bordered by woods. A rear patio glass door was broken, and items were strewn about the home. The residence was equipped with ADT motion sensors, which the homeowners were able to review. The motion sensors detected regular movement in the home between approximately 7:48 p.m. and 8:12 p.m. on October 17, 2025.

13.     Case agents identified several other burglaries in the Eastern District of Wisconsin with a same or similar modus operandi in Waukesha County and Ozaukee County:

    a.  On September 5, 2025, a burglary occurred at a home located at N32 W294XX Mozart Road, Delafield, Wisconsin—another home at the end of a cul-de-sac bordered by woods. There a rear patio door was also broken, and several items of jewelry were taken. Some of the items of jewelry were located in a wooded path at the rear of Mozart Road.

    b.  On October 10, 2025, a burglary occurred at a home located at 24XX W. Range Line Terrace, Mequon, Wisconsin—another home on a cul-de-sac bordered by woods. Entry appeared to have been made through a broken window outside of a second-floor balcony. A large amount of jewelry was stolen.

    c.  On October 16, 2025, a burglary occurred at a home located at 101XX Hunt Club Court, Mequon, Wisconsin—another home on a cul-de-sac bordered by woods. Entry appeared to have been made through a broken glass patio door. The victims reported that jewelry, cash, and silver coins had been stolen.

14.     Using that information, the Waukesha County Sheriff's Department requested and obtained a warrant issued by the Waukesha County Circuit Court for tower dump and area search warrants directed to T-Mobile, AT&T, U.S. Cellular, and Verizon for the reported burglaries. On November 5, 2025, T-Mobile produced records which identified four International Mobile

Subscriber Identifiers (IMSI)—310260423280089, 310260126406195, 310260555960125, and 310260620760105—in the area of Delafield during the relevant time period(s) and in the area of Mequon during the relevant time period(s). An International Mobile Subscriber Identity (IMSI) is a unique 15-digit number stored on a SIM card that identifies a subscriber on cellular networks, to enable network operators to authenticate users, manage billing, and route calls/data.

    a. IMSI 310260423280089 was in the general area of Hunt Club Court in Mequon on October 16, 2025 from approximately 6:44 p.m. to 7:32 p.m. This IMSI was also in the general area of Lost Creek Court in Delafield on October 17, 2025 from approximately 8:21 p.m. to 8:22 p.m.

    b. IMSI 310260126406195 was in the general area of Hunt Club Court in Mequon on October 16, 2025 from approximately 6:42 p.m. to 7:31 p.m. This IMSI was also in the general area of Lost Creek Court in Delafield on October 17, 2025 from approximately 7:56 p.m. to 8:21 p.m.

    c. IMSI 310260555960125 was in the general area of Hunt Club Court in Mequon on October 16, 2025 from approximately 6:43 p.m. to 7:25 p.m. This IMSI was also in the general area of Lost Creek Court in Delafield on October 17, 2025 from approximately 7:49 p.m. to 8:21 p.m.

    d. IMSI 310260620760105 was in the general area of Hunt Club Court in Mequon on October 16, 2025 from approximately 6:42 p.m. to 6:54 p.m. This IMSI was also in the general area of Lost Creek Court in Delafield on October 17, 2025 from approximately 7:30 p.m. to 8:21 p.m.

15. Based on the distance between Lost Creek Court in Delafield and North Hunt Club Court in Mequon, four IMSIs detected near the general areas of both burglaries at the relevant time

periods was consistent with the unidentified suspects. The Waukesha County Circuit Court issued an additional warrant ordering T-Mobile to produce additional records associated with the IMSIs 310260423280089, 310260126406195, 310260555960125, and 310260620760105.

16. On November 19, 2025, T-Mobile produced records to the Waukesha County Sheriff's Department with information for the four T-Mobile accounts based on the IMSI numbers. Those records did not include any identifying subscriber information, but did include call and text history, location data, and the International Mobile Equipment Identity (IMEI), generally a unique number assigned to the physical device, and the identification of the phone numbers associated with each IMSI.

17. The Waukesha County Sheriff's Department analyzed the records and identified one additional IMEI number relevant to the investigation—IMEI 356727113178329, which was associated with IMSI 310260423280089.

18. On November 25, 2025, the Waukesha County Sheriff's Department obtained a warrant issued by the Waukesha County Circuit Court requiring Apple, Inc. to produce information related to the IMEIs. On December 8, 2025, Apple provided a response with identifying and subscriber information for Apple accounts associated with the IMEI numbers, but did not provide any stored content for the accounts.

19. IMEIs are generally 15 digits, 14 of which are the IMEI and the 15th being a checksum digit. Due to some of the IMEI's reported to the Waukesha County Sheriff's Office by T-Mobile being 16 digits, the Waukesha County Sheriff's Office was able to calculate the actual 15-digit IMEI and verified these were found elsewhere in the T-Mobile records apart from one (1). The checksum is calculated using the Luhn algorithm. This algorithm is applied to the first 14 digits of an IMEI. Beginning left to right, every second digit is doubled. If the result of doubling

a digit results in a two-digit number, the two numbers should be summed to create a single digit value (i.e. 7 doubled is 14, 1+4=5). The resulting values for the first 14 digits are then summed, and the total is used to derive the checksum digit such that a complete 15-digit IMEI has a total sum dividable by ten (10). For example, if the summing of the first 14 digits results in 53, the checksum (or 15th digit) would be 7, thus making the total value 60, which is then divisible by 10.

20.     By reviewing the relevant content and non-content records for the Apple iCloud accounts and phones seized during the investigation, case agents also identified the users of these phone numbers. An analysis of the records described above revealed the following about the relevant devices and accounts:

    a. IMSI 310260126406195:

        i. User: LUCIANO ALEXIS SILVA CIFUENTES

        ii. Phone number: 407-528-1751

        iii. IMEI: 3561407733112407

        iv. IMEI: 356140773311240

            1. Apple ID 22269802858, amadofrank1701@icloud.com, "Leandro Quispe."

    b. IMSI 310260555960125

        i. User: ENJERBET ALEJANDRO ROJAS SILVA

        ii. Phone number: 321-316-9186

        iii. IMEI: 3515823727966106

        iv. IMEI: 351582372796617

2. Apple ID 18657387614, jamesrodrigues.09@icloud.com, "James Rodriguez." The billing information for this account was listed as "Enjerbet Rojas."

   c. IMSI 310260620760105:

      i. User: ANDRES IGNACIO ISAAC MELITA ESPARZA

      ii. Phone number: 321-316-9199

      iii. IMEI: 3550082803027707

      iv. IMEI: 355008280302773

3. Apple ID 22525379858, ignaciomelita22@icloud.com, "Ignacio Melita."

   d. IMSI 310260423280089:

      i. User: JORGE DARIO MARTINEZ ARENEDA

      ii. Phone number: 612-221-2511

      iii. IMEI: 3567271131783243

      iv. IMEI: 3534604707087301

      v. IMEI: 356727113178329

4. Apple ID 18898006527, saintmaxim10@icloud.com, "Saint Maxim."

21. Location data was analyzed for the above phone records which provided a general timeline of activity and travel patterns related to these devices. The location history indicated that between about September 3, 2025 and November 2, 2025, the devices routinely traveled back and forth across the United States, primarily between Florida and Wisconsin and Minnesota. Historical data was available for the CIFUENTES's device assigned IMSI *6195

beginning on August 20, 2025, ARENEDA's device assigned IMSI *0089 beginning on September 4, 2025, MELITA's device assigned IMSI *0105 beginning on September 10, 2025, and SILVA's device assigned IMSI beginning on September 10, 2025.

22.     On December 5, 2025, the Waukesha County Sheriff's Department obtained a pen register and trap-and-trace warrant issued by the Waukesha County Circuit Court for location information from T-Mobile for ARENEDA's phone number 612-221-2511, CIFUENTES's phone number 407-528-1751, SILVA's phone number 321-316-9186, and MELITA's phone number 321-316-9199. T-Mobile provided records which indicated that two of numbers, ARENEDA's phone number 612-221-2511 and MELITA's phone number 321-316-9199, no longer had active accounts. CIFUENTES's phone number 407-528-1751 was active and providing location data, and SILVA's phone number 321-316-9186, associated with IMSI 310260555960125, had recently changed its phone number, but the account was still active. The Waukesha County Sheriff's Department obtained a second pen register and trap-and-trace warrant issued by the Waukesha County Circuit Court for IMSI 310260555960125, which was served on December 9, 2025. T-Mobile identified the new telephone number assigned to SILVA's IMSI 310260555960125 as 612-806-1110.

23.     The location information for CIFUENTES's phone number 407-528-1751 and SILVA's phone number 612-806-1110 showed that the devices were in Florida before returning to Wisconsin on December 3, 2025. CIFUENTES's phone number 407-528-1751 and SILVA's phone number 612-806-1110 remained in Wisconsin until returning to Florida on December 7, 2025. During this timeframe, burglaries were reported in Fox Point, Wisconsin on December 4, 2025, in De Pere, Wisconsin on December 5, 2025, and, in Middleton, Wisconsin on December 6, 2025. The Waukesha County Sheriff's Department compared known locations of the

suspect devices at each burglary location during the above burglary dates and times with Flock Safety traffic cameras, and identified the vehicle used by the suspects as a white Nissan Rogue SUV (Florida: FMSB90), registered to CARLOS XAVIER ORTIZ RIVERA of Casselberry, Florida. Flock records documented the white Nissan Rogue SUV (Florida: FMSB90)'s movement from Florida to Wisconsin and back to Florida, consistent with the burglary locations and locations of CIFUENTES's device assigned phone number 407-528-1751 and SILVA's device assigned phone number 612-806-1110.

24. On December 10, 2025, at approximately 7:00 p.m., CIFUENTES's device assigned phone number 407-528-1751 and SILVA's device assigned phone number 612-806-1110 were traveling together as the devices left Florida on Interstate 75 heading north. At 10:19 p.m., a Flock Safety camera observed a red Dodge Durango (Florida: DW01LC) near Interstate 75 near mile marker 74 northbound in Turner County, Georgia. T-Mobile records for CIFUENTES's device assigned phone number 407-528-1751 and SILVA's device assigned phone number 612-806-1110 placed them in the same area. A check of the vehicle's registration identified it as a 2022 Dodge Durango (VIN: 1C4RDHDGXNC101523), registered to CARLOS XAVIER ORTIZ RIVERA in Casselberry, Florida.

25. On December 11, 2025 at approximately 8:20 a.m., a Flock camera captured the Dodge Durango near Marion, Illinois, while the T-Mobile records for CIFUENTES's device assigned phone number 407-528-1751 and SILVA's device assigned phone number 612-806-1110 placed the devices in the same general area. At approximately 11:09 a.m., a license plate reader under the control of the Illinois State Police captured the Dodge Durango on Interstate 55-104, at the same time as the T-Mobile records placed CIFUENTES's device assigned phone number 407-528-1751 and SILVA's device assigned phone number 612-806-1110 on Interstate 55 near

Divernon, Illinois. At approximately 2:27 p.m., an Illinois State Police camera captured the Dodge Durango on Interstate 90 at Newburg Road, Rockford, Illinois, while the T-Mobile location data placed CIFUENTES's device assigned phone number 407-528-1751 and SILVA's device assigned phone number 612-806-1110 on Interstate 90, also in Rockford, Illinois.

26. The Waukesha County Sheriff's Department continued to monitor the Flock Safety camera reports of the Dodge Durango, in conjunction with the T-Mobile location records, which documented both the Durango and CIFUENTES and SILVA's devices traveling together, northbound on Interstate 43 into Wisconsin. This information was relayed to patrol deputies with Waukesha County Sheriff's Department, who were advised to stage along Interstate 43 in an attempt to locate and stop the vehicle.

27. On December 11, 2025, at approximately 4:15 p.m., the Waukesha County Sheriff's Department observed the same red Dodge Durango pass their location and conducted a traffic stop of the vehicle. The Dodge Durango had three occupants. The driver was initially identified as "LEONARDO MATEO QUISEPE GARCIA" (DOB: 01/07/1999). With the assistance of Homeland Security Investigations and Immigrations and Custom Enforcement, the driver was later determined to be LUCIANO ALEXIS SILVA CIFUENTES (DOB: 01/17/2002), a Chilean national. CIFUENTES was in possession of a blue Apple iPhone 16 assigned call number 407-528-1751. The front seat passenger was identified as ENJERBET ALEJANDRO ROJAS SILVA (DOB: 04/26/2006), a Chilean national. (SILVA had previously been arrested under an alias on November 4, 2025 by the Hamilton County Sheriff's Department in Florida, as discussed below.) SILVA was in possession of a white Apple iPhone 16 assigned call number 612-806-1110. The third passenger located in the rear passenger compartment was identified as

LEANDRO FELIPE PINO URIBE (DOB: 12/02/2005), a Chilean national. URIBE was found in possession of a black Apple iPhone 13 assigned call number 786-516-6535.

28. During a search of the Dodge Durango, the Waukesha County Sheriff's Department found multiple items of evidentiary value. In the passenger compartment, investigators located a black backpack containing a Dewalt Sawzall, 12 red Diablo Sawzall blades, and 26 black radio antennas consistent with those used with Wi-Fi signal jammers to disrupt Wi-Fi connections and security system equipment. Lying on the floorboard of the vehicle, the Waukesha County Sheriff's Department found two window punch devices. All of these are burglar's tools used to commit the types of burglaries described here. Investigators also found fraudulent Peruvian identifications, including an identification card and passport for "JOSE MARTIN MARTEL MONTOYA," with a picture of URIBE and another fraudulent Ecuadorian identification for "CARLOS ENRIQUE CEDEMOS PERDOMO," with a picture of ROJAS SILVA. A fourth cell phone, a black Samsung Galaxy A16 assigned call number 110028195695608, was also located in the rear passenger compartment.

29. All three subjects were identified by HSI and ICE as being in the country illegally and were transported to the Waukesha County Jail for booking and interviews. Immigration holds were also placed on the three subjects.

30. Based on a review of the Wisconsin Circuit Court Access records, URIBE was charged with possession of burglarious tools, in violation of Wisconsin Statutes 943.12 and 939.05, in Waukesha County Case Number 2025CF002081. SILVA was charged with burglary of a building or dwelling, in violation of Wisconsin Statutes 943.10(1m)(a) and 939.05, and possession of burglarious tools, in violation of Wisconsin Statutes 943.12 and 939.05, in Waukesha County Case Number 2025CF002082. CIFUENTES was charged with burglary of a

building or dwelling, in violation of Wisconsin Statutes 943.10(1m)(a) and 939.05, and possession of burglarious tools, in violation of Wisconsin Statutes 943.12 and 939.05, in Waukesha County Case Number 2025CF002083. On April 13, 2026, URIBE pled guilty to possession of burglarious tools, in violation of Wisconsin Statutes 943.12 and 939.05, and sentenced to time served. URIBE was then charged by federal criminal complaint in Case No. 26-882 in the United States District Court for the Eastern District of Wisconsin with violations of 18 U.S.C. §§ 371, 2314, and 2315. CIFUENTES and SILVA are scheduled for plea and sentencing in Waukesha County Circuit Court on May 13, 2026.

**Expanded Investigation**

31.      On or about January 30, 2026, the Honorable Nancy Joseph, United States Magistrate Judge of the Eastern District of Wisconsin, issued a warrant under Case No. 26-859M to search the four devices found during the arrest of URIBE, CIFUENTES, and SILVA and the search of the Dodge Durango on December 11, 2025. A summary of the identifiers for those four phones is listed below:

    a.  CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751, listed the name "Frank Luciano" and email address amadofrank1701@icloud.com, IMEI 1: 356140773311240, IMEI 2: 356140772568949, Serial Number – FKFWFG79P7, and UDID: 00008140-001c23d002f2801c, was found in the possession of CIFUENTES.

    b.  SILVA's white apple iPhone 16 assigned call number 612-806-1110 (previously call number 321-316-9186), listed the name "James Rodriguez" and email address jamesrodrigues.09@icloud.com, IMEI 1: 351582372796617, IMEI 2:

351582372963415, Serial Number – JLHHWM9GWM, and UDID: 00008140-000919d134eb001c, was found in the possession of SILVA.

c. URIBE's black apple iPhone 13 assigned call number 786-516-6535, listed the name "Leandro Uribe" and email address leandrovt23@icloud.com, IMEI 1: 354835954781499, IMEI 2: 354835954802071, Serial Number – M92LQ2YJ22, UDID: 00008110-0019543136EB601E, found in the possession of URIBE.

d. The black Samsung Galaxy A16 assigned call number 110028195695608, containing email address acertijoperseverante@gmail.com, IMEI: 353751681172541, and IMSI: 310410462892231, owner yet to be determined, was found in the rear passenger compartment of the vehicle.

32. In reviewing these devices, case agents have tied this South American Theft Group with approximately 15 burglaries or attempted burglaries, involving CIFUENTES, SILVA, URIBE, ARENEDA, and MELITA, either collectively or individually. In summary, the investigation has shown that these co-conspirators rented Airbnb short-term rental properties in Florida, Wisconsin, and Minnesota, which were facilitated by WATAY, and which allowed CIFUENTES, SILVA, URIBE, ARENEDA, and MELITA to conduct the burglaries and attempted burglaries in Wisconsin, Minnesota, and elsewhere. A summary and timeline of the relevant incidents tied to NOBUAKI WATAY, along with the GPS location data, pictures, videos, text messages, encrypted application messages, bank records, and network connections is provided below.

33. More specifically, a review of CIFUENTES' blue Apple iPhone 16 assigned call number 407-528-1751 revealed numerous WhatsApp conversations between CIFUENTES and WATAY about Airbnb rentals. These conversations were conducted on WhatsApp utilizing

CIFUENTES' device assigned call number 407-528-1751 and WATAY using both the WhatsApp messenger account linked to call number 561-451-5293 (the "Target Cell Phone") with corresponding name "Nobuaki Watay" (WATAY's WhatsApp -5293), and WhatsApp messenger account "TheBigMann" (78066047004848@lid), with telephone number 352-657-5918 ("TheBigMann account").

34. On February 23, 2026, T-Mobile produced information for WATAY's phone number 561-451-5293 (the "Target Cell Phone"). According to T-Mobile's records, the service start date for the device was September 19, 2022 with subscriber listed as "Hector Guzman" with service address of 5077 NW 7th, Apartment 1702, Miami, Florida 33126. According to toll records, WATAY's 561-451-5293 (the "Target Cell Phone") phone number did not have message or call communications with CIFUENTES's phone number 407-528-1751 between April 1, 2025 and February 23, 2026.

<u>June 29, 2025 – Burglary of 1XX N. Fig Tree Lane, Plantation, Florida</u>

35. On or about June 29, 2025, a residence at 1XX North Fig Tree Lane, Plantation, Florida was burglarized, and a safe was broken into. The victim reported that approximately $25,000 worth of silver and 70 ounces of gold worth approximately $200,000 was stolen from his safe.

36. A review of CIFUENTES' blue Apple iPhone 16 assigned call number 407-528-1751 revealed numerous photos on the device around the time of the burglary at 1XX N. Fig Tree Lane, Plantation, Florida, some of which include:

    a. Photo of a white Heritage safe taken on June 29, 2025 at approximately 11:10 p.m., as seen below:



i.

1. During an interview with the victims on April 7, 2025, the victim confirmed the safe in the picture above was theirs.

b. Photos of CIFUENTES and MELITA together in a vehicle taken on June 29, 2025 at approximately 11:24 p.m. and again at 11:53 p.m., as seen below:



i.

c. A photo of CIFUENTES holding a box of gold standing next to a table with gold and silver on it, taken on June 30, 2025 at approximately 1:50 a.m., as seen below:



i.

1. During an interview with the victims on April 7, 2026, they confirmed the items depicted in the picture were consistent with the items they owned.

37.     A review of SILVA's white Apple iPhone 16 assigned call number 612-806-1110 revealed videos and photos relating to the burglary at 1XX N. Fig Tree Lane, Plantation, Florida, some of which include:

i. A video depicting silver coins, gold coins, gold bars, jewelry, and a gold-colored metal mesh purse laid out on a table, taken on June 30, 2025 at approximately 12:28 a.m., screenshots from video seen below:

ii.


1. During an interview with the victims on April 7, 2026, they confirmed that many of the gold and silver bullion resembled the ones stolen from their safe and confirmed that the gold mesh bag on the table was theirs.

ii. A picture of SILVA holding what appears to be the same box of gold as CIFUENTES was pictured holding, taken on June 30, 2025 at approximately 1:45 a.m., as seen below:



iii.

iii. A picture of SILVA holding a gold-colored purse, taken on June 30, 2025 at approximately 9:10 a.m. with GPS metadata of 25.858022, -80.228875, which corresponds with 1850 NW 92nd Street, Miami, Florida 33147, as seen below:



iv.

1. During an interview with the victims on April 7, 2026, the victims confirmed the gold mesh bag in SILVA's hand belonged to them.

iv. A video of gold coins and bars stacked and organized on a table near a weight scale, taken on June 30, 2025 at approximately 9:13 a.m., screenshot from video seen below:



v.

v. A picture of CIFUENTES and SILVA together where CIFUENTES is seen holding a stack of cash, taken on July 1, 2025 at approximately 5:38 p.m. with GPS metadata of 25.858022, -80.228981, which corresponds with 1850 NW 92nd Street, Miami, Florida 33147, as seen below:



vi.

vi. CIFUENTES, SILVA, and MELITA together in a kitchen, taken on July 4, 2025 at approximately 1:52 a.m. with GPS metadata of 25.957041, -80.256500 which corresponds with 20126 NW 32nd Place, Miami Gardens, Florida 33056, as seen below:



vii.

38. Records provided by Airbnb show that 20126 NW 32nd Place, Miami Gardens, Florida 33056 was rented by Guest ID 308873178, which Airbnb identified as corresponding with subscriber information for "Nobuaki Watay" listing nobuakiw13@hotmail.com and 1-561-451-5293 (the "Target Cell Phone"), with a start date of July 3, 2025 for seven nights and three guests.

**September 2, 2025-September 8, 2025: Minnesota Trip**

39. Historical location information from T-Mobile shows that CIFUENTES' device assigned IMSI *6195 traveled from Florida to Minnesota on or about September 3, 2025, and that ARENEDA's device assigned IMSI *0089 was also in the greater Minneapolis area as of

September 4, 2025. During this time period, a burglary was committed at 19XX Glenhill Road, Mendota Heights, Minnesota 55118 on September 6, 2025.

40.     Between August 20, 2025 and September 2, 2025, CIFUENTES' device assigned IMSI *6195 was in Florida until September 2, 2025 before arriving in Minnesota on September 3, 2025. On September 4, 2025, ARENEDA's device assigned IMSI *0089 appeared in Minnesota. CIFUENTES's device assigned IMSI *6195 and ARENEDA's device assigned IMSI *0089 left Minnesota on September 7, 2025, and arrived in Florida on September 8, 2025, consistent with traveling together and by automobile.

41.     As described above, T-Mobile only provided historical location information for MELITA's device assigned IMSI *0105 and SILVA's device assigned IMSI after September 10, 2025—after this trip to Minnesota. However, those records show that MELITA's device assigned IMSI *0105 and SILVA's device assigned IMSI *0125 were also in Florida on September 10, 2025, at the same time as CIFUENTES's device assigned IMSI *6195 and ARENEDA's device assigned IMSI *0089 were there, shortly after this trip, in the same general area and location of CIFUENTES's device assigned IMSI *6195 and ARENEDA's device assigned IMSI *0089.

September 6, 2025 – Burglary of 19XX Glenhill Road, Mendota Heights, Minnesota 55118

42.     On or about September 6, 2025 between approximately 5:30 p.m. and 8:55 p.m., a residence at 19XX Glenhill Road, Mendota Heights, Minnesota 55118 was burglarized. The victims reported to the Mendota Heights Police Department that suspects had smashed a patio door to gain entry into the house and pointed out footprints, which they believed belonged to the suspects. The victims initially reported a suspected loss of approximately $5,000 to $10,000, but needed to conduct an accounting of missing items. After doing so, the victims reported a total

estimated loss of $38,653.72, consisting of various jewelry, valued at approximately $37,379.29 and a U.S. coin collection, valued at approximately $1,274.43.

43. A review of SILVA's white Apple iPhone 16 assigned call number 612-806-1110 revealed videos and photos relating to the burglary at 19XX Glenhill Road, Mendota Heights, Minnesota 55118, some of which are described below:

   a. A video taken of a home with GPS location data of 44.887600, -93.152100, which corresponds to the vicinity of 18XX Hunter Lane, Mendota Heights, Minnesota, taken on September 6, 2025 at approximately 5:32 p.m.

   b. A photo of SILVA taking a selfie in the mirror, taken on September 7, 2025 at approximately 9:45 p.m. with GPS location data of 28.303950, -81.648903, which corresponds to 1543 Carey Palm Circle, Kissimmee, Florida 34747.

   c. A photo of SILVA and MELITA, both wearing various gold necklaces and bracelets, taken on September 7, 2025 at approximately 10:53 p.m., as seen below:



i.

1. During an interview on March 11, 2026, the victims confirmed that the bracelets worn by SILVA, as well as the rectangle necklace and longest chain worn by MELITA, belonged to them.

44. On March 23, 2026, officers of the Mendota Heights Police Department provided case agents with a photo of ARENEDA holding a clear plastic Ziploc bag containing various jewelry as well as other photos containing various jewelry spread out on the table, obtained from a state warrant issued to Apple for iCloud account records for saintmaxim10@icloud.com. The victims from the burglary at 19XX Glenhill Road, Mendota Heights, Minnesota 55118 had identified multiple items from the photos on the table as having been stolen from them.



v.

45.     Records provided by Airbnb show that 1550 7th Street West, St. Paul, Minnesota was rented by WATAY's Airbnb account using phone number 561-451-5293 (the "Target Cell Phone"), with a start date of September 3, 2025 for 4 nights and 3 guests.

46.     Records provided by Airbnb show that 1543 Carey Palm Circle, Kissimmee, Florida 34747 was rented by WATAY's Airbnb account using phone number 561-451-5293 (the "Target Cell Phone"), with a start date of August 11, 2025 for 31 nights and 3 guests.

**Text Messages Between CIFUENTES and WATAY**

47.     On or about September 10, 2025, CIFUENTES' blue Apple iPhone 16 assigned call number 407-528-1751 and 561-451-5293 (the "Target Cell Phone") "Nobuaki Watay" exchanged text messages. CIFUENTES writes "Dimelo," which can be translated to: "What's up?" WATAY responded: "No llega en iMessage. No tienes el iCloud activo ?" which can be translated to: "It's not coming through on iMessage. Don't you have iCloud active?" CIFUENTES responded: "Si obvio. Esque te escribí por mensaje de texto." which can be translated to "Yeah, obviously. It's just that I sent you a text message. I thought it was that." WATAY responded: "iMessage." CIFUENTES said: "Eliminó de "iMessage. No hmno. Busco y me sale así. Nomas." which can be translated to: "He deleted it from iMessage. No, brother. I search, and that's how it comes up. That's all." WATAY writes: "Hermano anda a ajustes mensajes y ve si te aparece iMessage," which can translate to: "Bro, go to Settings > Messages and see if iMessage appears." CIFUENTES responded: "Ya ahora. Lo habilite," which can be translated to: "Okay, just now. I've enabled it." WATAY responded: "Hermano si," which can be translated to "Brother, yes." CIFUENTES then goes on: "Con el número y el iCloud. Ahora si??," which can be translated to: "With the number and iCloud. Is that it now?" WATAY then writes: "Airbnb." CIFUENTES responds: "Hermano eso me pide. Social. Yo no tengo," which can be translated to: "Brother, that's

what it's asking me for—Social Security. I don't have one." WATAY responds: "Oh fuck, no sabia. Antes no era así," which can be translated to: "Oh fuck, I didn't know. It wasn't like this before." This excerpt of the conversation ends with CIFUENTS writing: "Dame un momento," which can be translated to: "Give me a minute." In these messages, CIFUENTES indicates that he does not have a social security number, and discusses the booking of an Airbnb with WATAY.

### September 16, 2025-September 22, 2025: Wisconsin Trip

48. Historical location information from T-Mobile shows that from September 16, 2025 to September 22, 2025, CIFUENTES' device assigned IMSI *6195, ARENEDA's device assigned IMSI *0089, MELITA's device assigned IMSI *0105, and SILVA's device assigned IMSI *0125 traveled from Florida to Wisconsin, leaving Florida on September 16, 2025. On September 17, 2025, all four devices arrived in Wisconsin, before leaving on September 21, 2025, and arriving in Florida on September 22, 2025. The travel pattern is consistent with all four devices traveling together in an automobile. Case agents have not yet identified any burglaries during this time period in Wisconsin.

### September 28, 2025-October 28, 2025: Airbnb in Kissimmee, Florida

49. On September 28, 2025 at approximately 3:07 p.m., CIFUENTES sent WATAY's WhatsApp -5293 connected to call number 561-451-5293 (the "Target Cell Phone") a link to an Airbnb in Kissimmee, Florida and said: "Ese mi Hermano," which translates to "This one brother." WATAY's WhatsApp -5293 responded with "Ok, Hermano," which translates to "Ok, brother." WATAY's WhatsApp -5293 later sent CIFUENTES a screenshot of an Airbnb booking confirmation for a "Townhouse in Kissimmee" from September 28, 2025 to October 8, 2025 costing $962.10. WATAY using WATAY's WhatsApp -5293 sent CIFUENTES a "Thank You"

message and instructions from Airbnb for 4707 Hemingway House Street, Kissimmee, Florida 34746. The message was addressed, "Hi, Nobuaki, Thank you so much for booking with us! . . ."

50. Records provided by Airbnb show that 4707 Hemingway House Street, Kissimmee, Florida was rented by Guest ID 308873178, which Airbnb identified as corresponding with subscriber information for "Nobuaki Watay" listing [nobuakiw13@hotmail.com](mailto:nobuakiw13@hotmail.com) and 1-561-451-5293 (the "Target Cell Phone"), with a start date of September 28, 2025 for 37 nights and 4 guests.

51. Records from CIFUENTES's PNC Bank account under CIFUENTES's alias LEONARDO M. QUISPE GARCIA show that CIFUENTES sent a $950 payment to "Nobuaki Watay" via Zelle on September 29, 2025. Later on September 29, 2025 at approximately 7:33 p.m., WATAY via WATAY's WhatsApp -5293 sent his address to CIFUENTES as "1015 nw 21st ave Gainesville fl 32609." Based on public records checks for Florida businesses, I know that this address is linked to WATAY and WATAY's business WL Express Services, LLC.

52. On September 29, 2025, CIFUENTES messaged WATAY via WATAY's WhatsApp -5293 and asked for marijuana and to extend the Airbnb from October 8, 2025 to October 28, 2025. WATAY responded that the cost would be $2,085 which included the marijuana, the $100 CIFUENTES already owed him, and the Airbnb extension. CIFUENTES counteroffered for $2,000, and then WATAY and CIFUENTES agreed to everything for $2,050.

### October 7, 2025-October 13, 2025: Minnesota Trip

53. Historical location information from T-Mobile shows that CIFUENTES' device assigned IMSI *6195, SILVA's device assigned IMSI *0125, MELITA's device assigned IMSI *0105, and ARENEDA's device assigned IMSI *0089 all left Florida on October 7, 2025, arriving in Minnesota on October 8, 2025. On October 12, 2025, all four devices left Minnesota arriving in Florida on October 13, 2025. The travel pattern is consistent with all four devices traveling together

in an automobile. During this time period, a burglary was committed at 50XX Interlachen Bluff, Edina, Minnesota on October 10, 2025.

<u>October 10, 2025 – Burglary at 50XX Interlachen Bluff, Edina, Minnesota</u>

54. On October 10, 2025 at 9:10 p.m., the Edina Police Department responded to a report of a burglary at 50XX Interlachen Bluff, Edina, Minnesota. Officers arrived on scene and observed that the glass sliding door to the rear deck of the home had been shattered. The front door was unlocked. All other exterior doors were locked. The Edina Police Department cleared and secured the home, but did not locate a suspect. The victims stated that nothing of value had been taken from the bathroom, but both closets for the primary bedroom located inside of the bathroom had been rifled through. Officers of the Edina Police Department observed clothes thrown on the floor along with jewelry boxes and drawers open. The female victim said that all of her jewelry had been taken from the closets and was able to provide documents and photos for various pieces of jewelry, including a 14 karat white gold and diamond tennis bracelet and a 14 karat white gold and diamond drop necklace, valued at $3,999.99.

55. The victims reported that multiple items were missing from the office, valued at approximately $6,708.99, including the following: a Gold 1847 watch with no band valued at $300 to $400; $1,000 in in 50 dollar and 20 dollar bills; approximately 600 Euros in 50 and 20 Euro bills; social security cards for all four members of the family; Wells Fargo checkbooks for both homeowners; 11 collectible gold coins; a copper medal from the Royal Family of Belgium from the Royal Academy of Medicine with the face of King Leopold; two Tiffany pens valued at $200 to $300 each; and an unknown amount of Cartier pens and pencils valued at $200 to $300 each.

56. A review of CIFUENTES' blue Apple iPhone 16 assigned call number 407-528-1751 revealed WhatsApp conversations between CIFUENTES and WATAY about booking a

rental in this area of Minnesota during the time period of the burglary. On October 7, 2025, CIFUENTES and WATAY communicated via WATAY's WhatsApp -5293 about booking an Airbnb located at 389 Charles Avenue, St. Paul, Minnesota. Later that day at approximately 6:12 p.m., CIFUENTES sent WATAY a picture containing an Ecuadorian identification with CIFUENTES's picture but with the name "ENGEL ESTEBAN LOPEZ ZAMBRANO" and a date of birth of April 18, 2000. Screenshots of two separate Zelle payments to "NOBUAKI WATAY" at nobuakiwatay05@gmail.com were found on CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751—one for $20 and one for $180. Records for Zelle confirm that these payments were made to WATAY via CIFUENTES's PNC Bank account under the name LEONARDO QUISPE GARCIA. WATAY then sent a message to CIFUENTES on October 7, 2025 at approximately 8:40 p.m. containing the address: "389 Charles Avenue, Saint Paul, Minnesota 55103, United States." The Airbnb at 389 Charles Avenue, Saint Paul, Minnesota 55103 is approximately a 27-minute drive from 50XX Interlachen Bluff, Edina, Minnesota.

57. Records provided by Airbnb show that 389 Charles Avenue, St. Paul, Minnesota 55103, was rented by Guest ID 43296121 ("Cure's Airbnb account"), under name "Rafael Cure", rafaelcure@yahoo.com, 1-786-720-9443, with a start date of October 8, 2025 for 4 nights and 3 guests. In later conversations with CIFUENTES, WATAY references having "Rafael" book Airbnbs.

58. A review of CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 revealed records and information relating to the burglary at 50XX Interlachen Bluff, Edina, Minnesota, some of which is described below:

    a. Location data from CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 showed the following:

i. On October 9, 2025, the device was located at or around 44.957794, -93.116620, in the vicinity of 389 Charles Avenue, St. Paul, Minnesota, the same location for the Airbnb booked by WATAY, at approximately 3:29 p.m. and was located at or around 44.957686, -93.116578, in the vicinity of 389 Charles Avenue, St. Paul, Minnesota, at approximately 8:29 p.m.

ii. On October 10, 2025, the device was located at or around - 44.957725, -93.116633, in the vicinity of 389 Charles Avenue, St. Paul, Minnesota, at approximately 10:26 a.m.; at or around -44.911683, -93.365606, the woods directly behind 50XX Interlachen Bluff, at approximately 12:10 p.m.; at or around -44.957728, -93.116613, in the vicinity of 389 Charles Avenue, St. Paul, Minnesota, at approximately 6:26 p.m.; at or around -44.909467, -93.367266, the end of the Doncaster Way parking lot in the vicinity of the trailhead to Highlands Park and 50XX Interlachen Bluff, between 7:13 p.m. to 7:50 p.m., with the burglary at 50XX Interlachen Bluff, Edina, Minnesota reportedly occurring between 6:30 p.m. and 9:10 p.m.; at or around -44.957791, -93.116645, in the vicinity of 389 Charles Avenue, St. Paul, Minnesota, at approximately 8:22 p.m.

a. Photographs and video recovered from CIFUENTES' blue Apple iPhone 16 assigned call number 407-528-1751 from October 10, 2025 showed the following:

i. At 6:45 p.m., CIFUENTES and MELITA were depicted together in car, as seen below:



a.

ii. At 7:15 p.m., Apple Maps screenshot of area surrounding Interlachen Bluff.

iii. At 9:17 p.m., a photo depicting a hand holding a gold-colored jewelry box with various jewelry and boxes on the table around it, as seen below:



a.

i. During an interview on March 11, 2026, the victim confirmed that many of the items within the photo were theirs, specifically the gold-colored jewelry box with red jewels at the center of the photo.

b. Photographs and video recovered from SILVA's white Apple iPhone 16 assigned call number 612-806-1110 between October 8, 2025 and October 13, 2025, showed the following:

i. On October 10, 2025 at approximately 8:50 p.m. with GPS coordinate metadata of -44.957800, -93.116600, which corresponds with 389 Charles Avenue, St. Paul, Minnesota, a video of a hand

wearing various jewelry including rings, a diamond bracelet, and gold-colored bracelet, and a video showing a table with jewelry boxes, various jewelry, gold pendant, a pocket watch, a silver colored pen, and a small digital scale, as seen below:

a.

    i. During an interview on March 11, 2026, the victim confirmed that many of the items within the photo were theirs, specifically the gold-colored jewelry box in the photo, the perfume, the Cartier branded pens, and the jewelry on the table.

    ii. On October 13, 2025 at approximately 4:49 p.m. with GPS coordinate metadata of -28.425600, -81.462400, a video taken in the vicinity of International Drive and Hawaiian Court in Williamsburg, Florida.

**October 14, 2025-October 19, 2025: Wisconsin Trip**

59.    Historical location information from T-Mobile shows that from October 14, 2025 to October 19, 2025, CIFUENTES' device assigned IMSI *6195, ARENEDA's device assigned IMSI *0089, MELITA's device assigned IMSI *0105, and SILVA's device assigned IMSI *0125 traveled from Florida to Wisconsin. On October 14, 2025, all four devices left Florida, arriving in Wisconsin on October 15, 2025.  During this time period, a burglary was committed at 101XX N. Hunt Club Court, Mequon, Wisconsin on October 16, 2025 and at W2XX N32XX Lost Creek

Court, Delafield, Wisconsin on October 17, 2025. On October 18, 2025, the four devices left Wisconsin arriving in Florida on October 19, 2025. The travel pattern is consistent with all four devices traveling together in an automobile.

60.     Records provided by Airbnb show that 2028 East Newport Avenue, Milwaukee, Wisconsin, was rented by Guest ID 43296121, under name "Rafael Cure," rafaelcure@yahoo.com, 1-786-720-9443, with a start date of October 15, 2025 for 4 nights and 3 guests.

October 16, 2025 – Burglary of 101XX N. Hunt Club Court, Mequon, Wisconsin

61.     On October 16, 2025, at approximately 9:10 p.m., the Mequon Police Department responded to a report of a burglary at 101XX N. Hunt Club Court, Mequon, Wisconsin. The victim reported that inside their safe, which was burglarized, was approximately $1,000 in U.S. currency in various denominations, a fake Rolex watch, and documents for their home and vehicles. The victim identified the following items as stolen from their home, valued at approximately $5,550.00: a pair of 1 carat gold earrings (with an approximate value of $2,000); 25 silver quarters (with an approximate value of $300); 25 silver dimes (with an approximate value of $200); 25 silver half dollar coins (with an approximate value of $1,000); U.S. currency estimated at $1,000 in total; various necklaces (with an approximate value of $1,000); and a fake Louis Vuitton Purse with gold-colored chain strap (with an approximate value of $50).

62.     A review of CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 revealed the following relating to the burglary at 101XX North Hunt Club Court:

    a.  Location data from CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 showed the following:

        i.  On October 14, 2025, the device was located at or around 28.479767, -81.441267, outside 4900 Northbridge Drive, Orlando, Florida, at

approximately 3:50 p.m., and at or around 30.002558, -82.598181, Loves Travel, 13700 U.S. 441, Lake City, Florida at approximately 8:05 p.m.

ii. On October 15, 2025, the device was located at or around 33.712127, -84.271920, Shell Gas, 2701 Candler Road, Decatur, Georgia at approximately 12:46 a.m.; at or around 43.079572, -87.884505, 2028 East Newport Avenue, Milwaukee, Wisconsin at approximately 8:02 p.m.; at or around 43.083912, -87.891564, in the vicinity of Hubbard Park in Shorewood, Wisconsin at approximately 8:32 p.m.; at or around 43.079572, -87.884505, 2028 East Newport Avenue, Milwaukee, Wisconsin at approximately 10:02 p.m.

iii. On October 16, 2025, the device was located at or around 43.079572, -87.884505, 2028 East Newport Avenue, Milwaukee, Wisconsin at approximately 9:02 a.m.; at or around 43.204365, -88.036363, Lemke Park, northwest of 101XX N. Hunt Club Court between approximately 6:47 p.m. and 7:32 p.m.;[2] at or around 43.079376, -87.884120, back to area of 2028 East Newport Avenue, Milwaukee, Wisconsin at approximately 8:04 p.m.

b. Web search data from CIFUENTES' device assigned call number 407-528-1751 related to the burglary at 101XX N. Hunt Club Court shows the following:

i. A Google Pin drop at 101XX N. Hunt Club Court, Mequon, Wisconsin on October 15, 2025 at approximately 10:37 p.m.

c. Photos discovered from CIFUENTES' device assigned call number 407-528-1751 related to the burglary at 101XX N. Hunt Club Court included the following:

---

2 Lemke Park can be accessed by walking through the wooded area behind 101XX North Hunt Club Court.

i. A picture of a Rolex watch held in a hand, taken on October 16, 2025 at approximately 10:22 p.m., as seen below:



1.

    a. During an interview on March 9, 2026, the victim confirmed that the Rolex watch in this photo was theirs.

63.    A review of SILVA's device assigned call numbers 786-969-3360 and prior call number assigned of 612-806-1110, revealed the following related to the burglary of 101XX N. Hunt Club Court, Mequon, Wisconsin:

a. Photos and videos recovered from SILVA's device:

i. On October 16, 2025 at approximately 10:17 p.m., a video of a Rolex watch was taken with GPS metadata of 43.079500, -87.884401, which corresponds with 2028 East Newport Avenue, Milwaukee, Wisconsin. A screenshot from the video can be seen below:



2.

    a. During an interview on March 9, 2026, the victim confirmed that the Rolex watch in this photo was theirs.

<u>October 17, 2025 – Burglary of W2XX N32XX Lost Creek Court, Delafield, Wisconsin</u>

64.     As described above, on October 17, 2025, at approximately 9:00 p.m., the Waukesha County Sheriff's Department responded to a report of a burglary at W2XX N3XXX Lost Creek Court, Delafield, Wisconsin, in which the victims reported the loss of approximately 100 pieces of jewelry, with an estimated value of $175,000 to $200,000. The home is located at the end of a cul-de-sac bordered by woods. A rear patio glass door was broken, and items were strewn about the home. The residence was equipped with ADT motion sensors, which the homeowners were able to review. The motion sensors detected regular movement in the home between approximately 7:48 p.m. and 8:12 p.m. One of the victims determined that their Sentry safe, which was in a bedroom closet at the time of the burglary, had been broken into. The victims made an initial determination of the items stolen from their home which included the following: government savings bonds with estimated value of $1,200; several silver and older coins with an approximate value of $500; and, various stolen jewelry with an undetermined value. The victims later provided an updated estimate of the jewelry stolen from their home of between $175,000 and $200,000.

65.     A review of CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 revealed the following relating to the burglary at W2XX N32XX Lost Creek Court.

a.  Location data from CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 showed the following:

i.  On October 17, 2025, CIFUENTES' device was located at or around 43.078888, -87.883692, in the area of 2028 East Newport Avenue, Milwaukee, Wisconsin at approximately 9:01 a.m.; at or around 43.079402, -88.322064 W2XX N32XX Lost Creek Court, Delafield, Wisconsin between approximately 7:00 p.m. and 8:20 p.m.; at or around 43.079599, -

87.884442, 2028 East Newport Avenue, Milwaukee, Wisconsin at approximately 9:07 p.m.

ii. On October 19, 2025, CIFUENTES' device was located at or around 28.276023, -81.469422, near 4711 Hemingway House Street, Kissimmee, Florida at approximately 7:59 p.m.

66. Records provided by Airbnb show that 4707 Hemingway House Street, Kissimmee, Florida was rented by Guest ID 308873178, which Airbnb identified as corresponding with subscriber information for "Nobuaki Watay" listing nobuakiw13@hotmail.com and 1-561-451-5293 (the "Target Cell Phone"), with a start date of September 28, 2025 for 37 nights and 4 guests.

67. A review of SILVA's device assigned call number 612-806-1110 and prior call number 786-969-3360, revealed the following related to the burglary of W2XX N32XX Lost Creek Court:

a. Photos and videos from SILVA's device assigned call number 612-806-1110 and prior call number 786-969-3360, related to the burglary of W2XX N32XX Lost Creek Court include the following:

i. On October 17, 2025 at approximately 9:41 p.m., SILVA's device contained a photo of various jewelry, jewelry boxes, and other items laid out on a bed, as seen below:

1.

a. During an interview on March 9, 2026, the victim from the burglary of 101XX N. Hunt Club Court, Mequon, Wisconsin on October 16, 2025 confirmed that there was a Kendra Scott branded necklace on the bed that belonged to their daughter.

ii. On October 19, 2025, between approximately 9:50 p.m. and 10:10 p.m., multiple photos with GPS metadata at or around 28.276177, -81.469309, 4707 Hemingway House Street, Kissimmee, Florida, were recovered depicting SILVA taking selfies while wearing various jewelry, as seen below:



2.

b. During an interview on March 9, 2026, the victim from the burglary of 101XX N. Hunt Club Court, Mequon, Wisconsin on October 16, 2025 confirmed that the watch was theirs and the ruby bracelet and matching ruby ring were their daughter's.

iii. As described above, the records provided by Airbnb show that 4707 Hemingway House Street, Kissimmee, Florida 34746 was rented using WATAY's Airbnb account, with a start date of September 28, 2025 for 37 nights and 4 guests.

**October 22, 2025-October 28, 2025: Minnesota Trip**

68.         Historical location information from T-Mobile shows that between October 22, 2025 and October 28, 2025, CIFUENTES' device assigned IMSI *6195, ARENEDA's device assigned IMSI *0089, MELITA's device assigned IMSI *0105, and SILVA's device assigned IMSI *0125 traveled from Florida to Minnesota. On October 22, 2025, all four devices left Florida, arriving in Minnesota on October 23, 2025. During this time period, a burglary occurred at 12XX Culligan Lane, Mendota Heights, Minnesota on October 25, 2025. On October 27, 2025, all four devices left Minnesota, arriving in Florida, on October 28, 2025. The travel pattern is consistent with all four devices traveling together in an automobile.

69.         Records provided by Airbnb show that 412 W 32nd Street, Minneapolis, Minnesota, was rented by Guest ID 43296121, under name "Rafael Cure," rafaelcure@yahoo.com, 1-786-720-9443, with a start date of October 23, 2025 for 3 nights and 3 guests.

October 25, 2025 – Burglary at 12XX Culligan Lane, Mendota Heights, Minnesota

70.     On October 25, 2025, at approximately 8:43 p.m., the Mendota Heights Police Department was dispatched to a burglary in progress call at 12XX Culligan Lane, Mendota Heights, Minnesota. One of the victims reported that they were asleep in the second-level bedroom and saw lights moving on the other side of her door and thought it was their spouse who slept in a bedroom on the third floor. That victim then heard the door break open which caused them to scream which startled the suspect, and the victim described seeing two smaller statured people wearing black ski masks and dark colored clothing. The victim screamed at his/her spouse to call the police and then saw one of the suspects leave out of the north side living room window. The victims and officers determined that the following items were taken from the home with a total estimated value of $400: a small, yellow colored metal Seiko clock with "Karen Winter" engraved

(with an estimated value of $400); and, a 50-year-old brooch that was yellow, pendulum, fish shaped (with an unknown estimated value).

71.     A review of CIFUENTES' and SILVA's cellular devices showed the following related to the burglary of 12XX Culligan Lane, Mendota Heights, Minnesota:

a.     Location data recovered from CIFUENTES' device assigned call number 407-528-1751 from October 22, 2025 until October 25, 2025, include the following:

    i.     On October 22, 2025, CIFUENTES' device was located at or around 28.276071, -81.469381, 4707 Hemingway House Street, Kissimmee, Florida at approximately 1:19 p.m.

    ii.     On October 23, 2025, the device was located at or around 44.944964, -93.284943, near 412 West 32nd Street, Minneapolis, Minnesota at approximately 7:07 p.m.; at or around 44.970222, -93.020720, Hazel Park Recreation Center, 945 Hazel Street North, St. Paul, Minnesota 55119 at approximately 8:06 p.m.; at or around 44.944920, -93.285007, back to 412 West 32nd Street, Minneapolis, Minnesota at approximately 8:39 p.m.

    iii.     On October 25, 2025, CIFUENTES' device was located at or around 44.944905, -93.285070, 412 West 32nd Street, Minneapolis, Minnesota at approximately 9:13 a.m.; at or around 44.888010, -93.156029, approximately 150 feet west of 12XX Culligan Lane, Mendota Heights, Minnesota at approximately 8:22 p.m.; at or around 44.944919, -93.285096, back to 412 West 32nd Street, Minneapolis, Minnesota at approximately 9:09 p.m.;

b. Photos discovered on CIFUENTES' device assigned call number 407-528-1751 that relate to the burglary at 12XX Culligan Lane, Mendota Heights, Minnesota include the following:

    i. Screenshot of a $300 Zelle payment to "NOBUAKI WATAY," with email address nobuakiwatay05@gmail.com, confirmation number PNCAA0VRI39n, taken on October 23, 2025 at approximately 10:23 p.m. (CIFUENTES's PNC bank account records under his alias LEONARDO QUISPE GARCIA confirm that Zelle payment was sent to WATAY.)

    ii. Screenshot of an Airbnb rental confirmation page for a rental property in Florida from September 10, 2025 to October 10, 2025, with reservation code, 17614045712091, with a total payment amount of $495.40 and payment option to pay with Visa ending in 2981.

    iii. Screenshot of a $400 Zelle payment to "NOBUAKI WATAY," with email address nobuakiwatay05@gmail.com. (CIFUENTES's PNC bank account records under his alias LEONARDO QUISPE GARCIA confirm that Zelle payment was sent to WATAY.)

    iv. Screenshot of an Airbnb rental confirmation page for a rental property in the Fiesta Key Community from September 28, 2025 to November 2, 2025 with reservation code HMPQYZKW5A, with a total payment amount of $341.78. This reservation code is the one generated for the Airbnb rental of 4707 Hemingway House Street, Kissimmee, Florida using WATAY's Airbnb account.

**October 29, 2025-November 2, 2025: Minnesota Trip**

72.	Historical location information from T-Mobile shows that between October 29, 2025 and November 2, 2025, CIFUENTES' device assigned IMSI *6195, ARENEDA's device assigned IMSI *0089, MELITA's device assigned IMSI *0105, and SILVA's device assigned IMSI *0125 traveled from Florida to Minnesota. On October 29, 2025, all four devices left Florida, arriving in Minnesota on October 30, 2025. During this time period, a burglary occurred at 26XX Countryside Drive West, Orono, Minnesota on October 31, 2025.  On November 2, 2025, all four devices left Minnesota and arrived in Florida on November 3, 2025. The travel pattern is consistent with all four devices traveling together in an automobile.

<u>October 31, 2025 – Burglary of 26XX Countryside Drive West, Orono, Minnesota</u>

73.	On October 31, 2025, at approximately 10:24 p.m., officers of the Orono Police Department responded to a report of a burglary at 26XX Countryside Drive West, Orono, Minnesota. The rear patio sliding glass door was shattered, and a safe was stolen along with cash, guns, and precious metals. In reviewing the camera that was facing the pool on the north side of the home, one of the victims was able to determine the entry and exit time of the suspects, which showed the suspects at approximately 9:09 p.m. At approximately 11:23 p.m., the suspects could be seen leaving from the same door as they entered carrying a safe. After clearing the victims' house, officers checked the park and found tire tracks, which had driven through the tall grass. Officers believed that the suspects carried the safe to the park and loaded it into a vehicle. Officers took photos of the tracks through the tall grass.

74.	The homeowners reported an estimated total loss of approximately $18,700, which consisted of the theft of the following items: a Mossberg Model 590 shotgun (with an estimated value $700); various necklaces, earrings, and rings (with an estimated value of $10,000);

a safe (with an estimated value of $1,500); cash in the safe (with an estimated value of $1,500); and, 100 ounces of silver bars (with an estimated value of $5,000).

75.     The Orono Police Department continued their investigation and coordinated with the Waukesha County Sheriff's Department, including obtaining historical cell site location information for four numbers and IMSIs that the Waukesha County Sheriff's Office had identified in relation to the burglary on October 17, 2025, and determined that the same devices that had been involved in the burglary at W2XX N32XX Lost Creek Court, Delafield, Wisconsin on October 17, 2025 appeared to have been in Minnesota, particularly in the Old Crystal Bay Road and Watertown Road area in Long Lake and Orono, Minnesota, and in Edina and Eden Prairie, Minnesota.

76.     A review of CIFUENTES' blue Apple iPhone 16 assigned call number 407-528-1751 and SILVA's device assigned call number 612-806-1110 and prior call number 786-969-3360, revealed the following related to the burglary of 26XX Countryside Drive West on 26XX Countryside Drive West, Orono, Minnesota on October 31, 2025:

   a. Location information from CIFUENTES' device assigned call number 407-528-1751, include the following:

      i. On October 30, 2025, CIFUENTES' device was located at or around 44.957731, -93.116752, 389 Charles Avenue, St. Paul, Minnesota at approximately 3:15 p.m.; at or around 44.909955, -93.364307, the woodline behind 5128 Skyline Drive, Minneapolis, Minnesota at approximately 7:16 p.m.; at or around 44.957748, -93.116748, back to 389 Charles Avenue, Minneapolis, Minnesota at approximately 10:38 p.m. (As described above, WATAY appears to have booked the Airbnb rental property where

CIFUENTES and others stayed during the time period of the burglary using Rafael Cure's Airbnb account.)

ii. On October 31, 2025, CIFUENTES' device was located at or around 44.813703, -93.551356, Minnesota River Bluffs Trail near Bluff Creek Drive at approximately 12:52 a.m.; at or around 44.915960, -93.274623, 35W near East 48th Street and East 47th Street in Minneapolis, Minnesota at approximately 2:08 a.m.; at or around 44.957811, -93.116633, back to 389 Charles Avenue, Minneapolis, Minnesota at approximately 2:31 a.m.; at or around 44.978215, -93.591061, near PARK by Bradeys, north of 26XX Countryside Drive at approximately 10:39 a.m.; at or around 44.976228, -93.590438, 26XX Countryside Drive West, Orono, Minnesota between approximately 6:49 p.m. and 7:24 p.m.; at or around 44.957710, -93.126595, 625 Charles Avenue, St. Paul, Minnesota at approximately 8:26 p.m.

b. Photos and videos discovered within CIFUENTES' device assigned call number 407-528-1751, include the following:

i. Photo of an individual dressed in all black, standing near a body of water, holding what appears to be a black AR-15 style rifle, taken on October 31, 2025 at approximately 7:57 p.m., as seen below:



3.

ii. Photo of an individual dressed in all black, which appeared to be CIFUENTES, standing near a body of water, holding what appears to be a black AR-15 style rifle with a black safe on the ground, taken on October 31, 2025 at approximately 7:56 p.m., as seen below:

4. On March 22, 2026, the victim advised officers of the Orono Police Department that the rifle in the photo belonged to them, specifically, the rifle was a Black Rain Ordnance SPEC15 (Serial: SM020884).



5.

c. During an interview on March 12, 2026, the victim confirmed that the black safe on the ground was theirs.

iii. Screenshot of a Zelle payment of $180.00 to "NOBUAKI WATAY" with email address nobuakiwatay05@gmail.com, captured on November 1, 2025 at approximately 10:07 a.m.[3]

c. Location information recovered from SILVA's device includes the following:

iv. On October 31, 2025 at approximately 3:30 p.m., a Google Pin location was saved with GPS metadata of 44.973475, -93.584150, corresponding with an

---

[3] Records confirm that this payment was sent from CIFUENTES' PNC account under his alias LEONARDO QUISPE GARCIA with transaction ID PNCAA0Vba33X.

area near the trailhead of Luce Line State Trail, behind Countryside Drive West in Orono, Minnesota.

    v. On November 1, 2025, SILVA's device made a network connection at or around 44.957722, -93.116623, corresponding with 389 Charles Avenue, St. Paul, Minnesota at approximately 2:29 p.m.

    vi. On November 3, 2025, SILVA's device made a network connection at or around 28.276169, -81.469300, corresponding with 4707 Hemingway House Street, Kissimmee, Florida. As described above, the records provided by Airbnb show that 4707 Hemingway House Street, Kissimmee, Florida 34746 was rented using WATAY's Airbnb account, with a start date of September 28, 2025 for 37 nights and four guests.

d. The following videos and photos were recovered from SILVA's device with assigned call number 612-806-1110 and prior call number of 786-969-3360 related to the burglary at 26XX Countryside Drive West, Orono, Minnesota on October 31, 2025:

    vii. A picture of two individuals standing over a black safe on the ground, with GPS metadata of 45.003241, -93.430223, corresponding with the shoreline near West Medicine Lake Park Beach in Plymouth, Minnesota, captured on October 31, 2025 at approximately 7:52 p.m., as seen below:

    6.

d. During an interview on March 12, 2026, the victim confirmed that the black safe on the ground was theirs.

77. After leaving Minnesota, the four devices stopped at a cannabis dispensary in Carbondale, Illinois. Case agents obtained surveillance video from the cannabis dispensary, capturing a black Mercedes SUV arriving. This vehicle was later identified as a 2020 Mercedes-Benz GLC 350 (Florida: DM60TA), registered to an individual in Miami, Florida. The driver exited the vehicle and entered the store, where he was identified by an unknown country passport as "LEONARDO QUISEPE" (DOB: 01/07/1999) and later identified by law enforcement as LUCIANO ALEXIS SILVA CIFUENTES (DOB: 01/17/2002), a Chilean national. During the transaction, the male subject provided the store with telephone number 407-528-1751, the number identified as belonging to CIFUENTES as described above. The vehicle and devices returned to Florida.

<u>November 4, 2025 - Arrest of SILVA and Posting of Bail in Hamilton County, Florida</u>

78. On November 4, 2025, as CIFUENTES' device assigned IMSI *6195, ARENEDA's device assigned IMSI *0089, MELITA's device assigned IMSI *0105, and SILVA's device assigned IMSI *0125 appeared ready to leave Florida again, the 2020 Mercedes-Benz GLC 350 (Florida: DM60TA) was stopped by the Hamilton County Sherrif's Department in Hamilton County, Florida. The driver was arrested for reckless driving and booked into the jail under the name "JOSE LUIS CENTENO COLONIA" of Peru, later identified by law enforcement as ENJERBET ALEJANDRO ROJAS SILVA (DOB: 04/27/2006), a Chilean national. Phone records show that after the traffic stop, several of the devices traveled to a nearby gas station where they remained for about three hours before returning to the Kissimmee, Florida area.

79. On November 6, 2025, "CENTENO COLONIA" attempted to communicate from jail with phone number 321-316-9186, which matched the phone number for SILVA's device. Phone number 321-316-9186 received a text message from an inmate messaging service which indicated "CENTENO COLONIA" was attempting to contact them. It is unclear if any communications occurred as Hamilton County Jail advised that they had no records of communications made by CENTENO COLONIA.

80. On November 7, 2025, CENTENO COLONIA was released from the Hamilton County Jail after his $6,000 cash bond was posted by a subject identified as "JESUS LAYA." Hamilton County Jail did not have any additional records regarding LAYA. It was later determined by the Waukesha County Sheriff's Department that CENTENO COLONIA was actually ENJERBET ALEJANDRO ROJAS SILVA based on a comparison of a booking photo.

81. After reviewing CIFUENTES' blue Apple iPhone 16 assigned call number 407-528-1751, containing the name "Frank Luciano" and email address amadofrank1701@icloud.com, Case agents determined that CIFUENTES had contacted WATAY to assist with releasing SILVA from the Hamilton County Jail and posting his bail, and that WATAY was concerned about immigration authorities detaining SILVA. That review revealed the following in part:

   a. On November 5, 2025, CIFUENTES contacted NOBUAKI WATAY via WhatsApp messenger to ask for help in getting SILVA released from jail after his arrest. CIFUENTES provided WATAY with SILVA's alias, the one SILVA was arrested with, "JOSE LUIS CENTENO COLONIA" (DOB: 01/27/2004), so that WATAY could locate SILVA. WATAY was listed in CIFUENTES' WhatsApp messenger as "TheBigMann" (78066047004848@lid).

b. On November 5, 2025 at approximately 6:46 a.m., TheBigMann account sent CIFUENTES information that the account had received from Airbnb that was addressed to "Nobuaki." Later on November 5, 2025 at approximately 1:45 p.m., TheBigMann account provided CIFUENTES with contact information and an address labeled "WATAY LARA, NOBUAKI JESUS, 4440 SW Archer" because CIFUENTES needed contact information to transfer money to WATAY.

c. On November 5, 2025 between approximately 12:21 p.m. and 1:44 p.m., TheBigMann account and CIFUENTES discussed the possibility of Immigration and Customs Enforcement grabbing SILVA if he is released. TheBigMann account then sends the following message to CIFUENTES: "Hermano si pagan es de una pero si le dijeron a ICE y los esperan al salir es el problema, dejame averiguar" which can be translated to, "Brother, if they pay, it's fine, but if they told ICE and they're waiting for them when they leave, that's the problem. Let me find out."

d. On November 6, 2025 at approximately 10:44 a.m., TheBigMann account sent a message containing "Nobuaki Watay 5614515293." Later on November 6, 2025 at approximately 2:24 p.m., "TheBigMann" account provided CIFUENTES with the following banking information to deposit money into: "WL express services LLC, Account 1100023983522, 1015 nw 21st ave Gainesville fl 32609." The information provided by the TheBigMann account indicates that NOBUAKI WATAY is the owner and user of TheBigMann account.

e. On November 6, 2025 at approximately 6:30 a.m., CIFUENTES advised WATAY that he sent him $1,800 via Zelle, but could only send $3,500 per day so he would use various methods to get WATAY money to help SILVA. Records provided by

Zelle for CIFUENTES' Zelle account linked to his PNC Bank account under alias "LEONARDO QUISPE GARCIA" confirmed CIFUENTES's $1,800 payment to WATAY at 2:30 p.m. and another payment of $1,700 to WATAY via Zelle on November 6, 2025 at approximately 3:39 p.m. Later on November 6, 2025 at approximately 2:40 p.m., CIFUENTES sent WATAY a photo of a Truist Bank receipt showing a deposit of $1,080 into an account ending in 3522. On November 6, 2025 at approximately 2:56 p.m., CIFUENTES also sent WATAY a screenshot of a Ria money transfer receipt number 736249434, totaling 1,968,373 CLP (Chilean Pesos). This Ria receipt indicated the sender was "ERIKA ISABEL DE LOURDES ESPARZA" and the transfer was sent from Ria Chile Servicios Financieros S.P.A. Rut No 76.1343934-1, Avda. Libertador Bernardo, O'Higgins 1449 T.4 Ofic 1502, Santiago, Chile, telephone number 600-586-7777. The photo of the Ria receipt was slightly blurry at the bottom, but "JESUS WATAY LARA" can be made out at the bottom of the receipt in the beneficiary section.

f. On November 6, 2025 at approximately 7:10 p.m., WATAY sent a message to CIFUENTES indicating that the jail also accepts credit cards and he is $1,000 short of the required $6,000, so WATAY is bringing credit cards with him to pay the bail. WATAY sent CIFUENTES screenshots of Google Maps to show CIFUENTES that he was driving to the jail to release SILVA. On November 6, 2025 at approximately 10:30 p.m., WATAY sent a photo of an Inmate Commissary Deposit with what appears to be the name "CENTENO COLONIA, JOSE LUIS" typed into the machine. WATAY sent a picture to CIFUENTES showing payment receipts totaling approximately $4,695.77 for "CENTENO COLONIA, JOSE" and

told CIFUENTES that is all he can do today and would have to come back the following day for the remaining balance.

    g. On November 7, 2025, WATAY sent a picture to CIFUENTES and a message indicating he had the $1,310 for the remaining balance. On November 7, 2025 at approximately 1:35 p.m., WATAY sent a photo of a payment receipt of $1,310 for "CENTENO COLONIA, JOSE." SILVA was released later that day.

82. On November 13, 2025, the 2020 Mercedes-Benz GLC 350 (Florida: DM60TA) was released from the private tow company to a subject identified as "VINCENT MILLER JR." after the tow bill was paid in cash.

### November 12, 2025-November 16, 2025: Attempted Minnesota Trip

83. On November 11, 2025, WATAY and CIFUENTES communicated via WhatsApp about booking an Airbnb rental. Specifically, WATAY and CIFUENTES discussed the rental of a townhouse in North Saint Paul, Minnesota from November 12, 2025 to November 16, 2025. After WATAY successfully booked the rental property, CIFUENTES had car trouble in White Springs, Florida and advised WATAY that he needed to cancel the Airbnb and get help to fix his car. The conversation was recovered from CIFUENTES' device assigned call number 407-528-1751.

84. CIFUENTES and WATAY communicated via WhatsApp, with WATAY using the WhatsApp account "TheBigMann" 78066047004848@lid, with telephone number 352-657-5918. On November 11, 2025, beginning at approximately 12:36 p.m., TheBigMann account sent an Airbnb link, https://www.Airbnb.com/l/YyzWuHvU.[4] TheBigMann account confirmed with CIFUENTES by sending: "Este 100%?," which translates to, "This one, 100%?" CIFUENTES'

---

4 The hyperlink leads to a rental for a property in North Saint Paul, Minnesota, United States from November 12, 2025 to November 16, 2025 with an Airbnb host named "Nancy."

device writes: "Si hmno," which appears to mean "Si, hermano," which translates to: "Yes, brother." TheBigMann account writes: "Ya Rafael lo va a agarrar y ava," which translates to "Rafael is going to get it, he's coming." TheBigMann account sent a screenshot of an Airbnb rental confirmation and the following messages: "Mira fue menor bro, no me pases los 80$ dejamost 300$ pendiente proxima semana y listo. Fue menos de lo que era," which translates to: "Look, it was less, bro, don't send me the $80, we'll leave $300 pending for next week and that's it. It was less than it was." CIFUENTES' device writes: "Okey dale esta bien. Gracia hmno," which translates to: "Ok, great, all good. Thanks, brother."

85. At approximately 2:44 p.m., CIFUENTES' device writes: "Tienes un mecanuco," which translates to "Do you have a mechanic?" TheBigMann account writes: "Te paró la policía?" which translates to "Did the police stop you?" CIFUENTES' device writes: "No hermano el vehiculo," which translates to: "No, brother, the vehicle." TheBigMann account writes: "Pásame location para preguntarle al mío de aquí bro," which translates to: "Send me your location, so I can ask my guy here, bro." At approximately 2:45 p.m., CIFUENTES' device sent an Apple Maps location with GPS location data of 30.303119, -82.791184, corresponding with Interstate 75 near Northwest Chloe Drive in White Springs, Florida. TheBigMann account writes: "Hermano mi mecánico es un gringo gringo cero español mándale tu location a este número," which translates to: "Bro, my mechanic is a Gringo, zero Spanish, send your location to this number," and then sent a screenshot with the number for "Chris Mechanic." CIFUENTES' device writes: "Ya hmno bkn. Gracias," which translates to: "Yeah, bro, cool. Thanks."

86. At approximately 5:23 p.m.: TheBigMann account sent screenshot of an Airbnb refund screen as seen below:



viii.

TheBigMann account writes: "Que si ella va a hacer un partial refund de la mayoría pero tiene que iniciarlo ella me dijo Airbnb y poner el monto, ando esperando a ver que lanza pero ella dice que si va a devolver que no hay problema, vamos a ver que dice bro," which translates to "She said she's going to do a partial refund of most of it, but she has to initiate it. She told me Airbnb and to enter the amount. I'm waiting to see what she says, but she says that if she's going to do it, there's no problem. Let's see what she says, bro." TheBigMann account sent screenshots of communications with Airbnb Host "Nancy" about cancelling and requesting a refund of the Airbnb due to the vehicle issues.

87. On November 12, 2025 and November 13, 2025, the conversation between CIFUENTES and WATAY continued. On November 12, 2025 between 7:27 a.m. and 9:13 a.m., TheBigMann account sent the screenshots of communications with Airbnb Host "Nancy" again about the cancellation and refund. At 7:28 p.m., theBigMann account writes: "Me desperté de una pensando en eso bro andamos ahí ligando que la señora Nancy haga lo que le toca," which translates to: "I woke up thinking about that bro, we're out here flirting, let Ms. Nancy do what she has to do." On November 13, 2025 at 9:56 a.m., TheBigMann account writes: "Ok vamos a sacar cuentas Tú me tiene 350$ que es lo de la semana pasada y lo de Chris Y por el Airbnb me diste 200$ y la señora va a devolver 250$. Ósea aquí voy a tener 450$, quieres que me cobre los 350$ y te mando los 100$ restantes ? Dime a qué Zelle te los disparo," which translates to: "You

owe me $350, which is from last week and Chris's money. And for the Airbnb, you gave me $200, and the lady is going to pay back $250. So here I'll have $450, do you want me to charge you $350 and send you the remaining $100? Tell me which Zelle account I'll send them to." At 10:00 a.m., CIFUENTES device writes to WATAY: "No hermano dame los 250$ y lo otro que yo te di para el bnb lo descuentas de lo que te debo. Yoe l lunes. Te doy lo que falta," which translates to: "No, brother, give me the $250 and the other thing I gave you for the bnb, you deduct it from what I owe you. And on Monday. I'll give you what's missing. At 10:01 a.m., TheBigMann Account writes: "Ok descuento los 200$ y te mando 250$. Hoy le pregunto a Rafael si le cayó ya eso," which translates to, "Ok, Ill deduct the $200 and send you $250. Today I'm asking Rafael if he received that yet." At 10:01 a.m., CIFUENTES device writes to WATAY: "Si hymn," which translates to: "Yes, brother."

88.     Records provided by Airbnb show that 2082 Park Row, North Saint Paul, Minnesota, was rented by Guest ID 43296121, under name "Rafael Cure", rafaelcure@yahoo.com, 1-786-720-9443, with a start date of November 12, 2025 for 4 nights and 2 guests. Records also show that this reservation was cancelled on November 12, 2025—the same date that CIFUENTES and WATAY communicated about cancelling the reservation with "Nancy," as described above.

**November 19, 2025-November 23, 2025: Minnesota Trip**

89.     Historical location information from T-Mobile shows that between November 19, 2025 and November 23, 2025, CIFUENTES's phone number 407-528-1751 and SILVA's phone number 612-806-1110 returned to the greater Minneapolis area. During this time period, a burglary occurred at 63XX Westwood Court, Edina, Minnesota on November 20, 2025, and at 18XX Hunter Lane, Mendota Heights, Minnesota on November 21, 2025. According to the Waukesha

County Sheriff's Department, URIBE's phone number 786-516-6535 was also traveling with CIFUENTES' and SILVA's devices during this time period.

90. Records provided by Airbnb show that 6800 Pillsbury Avenue, Richfield, Minnesota, was rented by Guest ID 43296121, under name "Rafael Cure", rafaelcure@yahoo.com, 1-786-720-9443, with a start date of November 19, 2025 for 5 nights and 1 guest.

<u>November 20, 2025 – Burglary of 63XX Westwood Court, Edina, Minnesota</u>

91. On November 20, 2025, at approximately 6:25 p.m., the Edina Police Department was dispatched to 63XX Westwood Court, Edina, Minnesota to assist with a report of a forced entry burglary. Upon arrival, officers cleared the residence, starting at the glass patio door. The patio door was locked, and the center glass pane was shattered. There was an approximately two-inch hole at the bottom of the shattered glass. The house had been rummaged through. During a subsequent search of the exterior of the home, the Edina Police Department located a black and yellow flat crowbar lying on the ground in the corner by some evergreen trees and a tan leather mitten lying on top of a leaf covered portion of grass, with no leaves on top of the mitten. The Edina Police Department collected the crowbar and mitten as evidence. The victims were in Florida at the time of the burglary and left on Halloween, and their daughter and son responded to the residence with the homeowners on Facetime. The victims reported that some of the victim's jewelry had been taken from her jewelry box, with a total estimated loss at the time of the report, based on the insurance documents, of $297,641.

92. A review of CIFUENTES's blue Apple iPhone 16 assigned call number ending in 407-528-1751 and SILVA's white Apple iPhone 16 assigned call number 612-806-1110 and prior call number 786-969-3360 revealed the following relating to the burglary at 63XX Westwood Court, Edina, Minnesota:

a.  Location information retrieved from CIFUENTES' device include the following:

i.  On November 18, 2025, CIFUENTES' device was located at or around 28.250546, -81.590395, near 180 Villa Domani Court, Davenport, Florida at approximately 6:52 p.m.;

1.  Records provided by Airbnb show that 184 Villa Domani Court, Davenport, Florida 33896 was rented by Guest ID 308873178, which Airbnb identified as corresponding with subscriber information for "Nobuaki Watay," listing nobuakiw13@hotmail.com and 1-561-451-5293 (the "Target Cell Phone"), with a start date of November 3, 2025 for 30 nights and 4 guests.

ii.  On November 20, 2025, CIFUENTES' device was located at or around 44.879674, -93.282177, 6800 Pillsbury Avenue, Richfield, Minnesota at approximately 9:57 a.m.; at or around 44.886633, -93.288197, Lake winds Food at 6420 Lyndale Avenue South, Richfield, Minnesota at approximately 11:34 a.m.

b.  Photos and videos recovered from CIFUENTES' device include the following:

iii.  On November 21, 2025, at approximately 12:36 a.m., a photo of CIFUENTES in a brown sweatshirt wearing two cross necklaces, as seen below:

2.

e. During an interview on March 11, 2026, the victims confirmed that both cross necklaces were theirs.

iv. On November 22, 2025, at approximately 8:44 p.m., a photo of CIFUENTES sitting at a wood table with various jewelry, precious metals, and jewelry boxes laid out on the table. There is a white binder bearing the words "Sunny Crest C," which is a binder connected to the Airbnb property, on the table as well, as seen below:



3.

f. During an interview on March 11, 2026, the victims confirmed that many of the items of jewelry were theirs, including the gold Rolex watch on the table, both necklaces worn by CIFUENTES, and a set of matching gold earrings, amongst others.

v. On November 23, 2026, TheBigMann WhatsApp account sent the following message, addressed to "Rafael," referring to Rafael Cure, to CIFUENTES with checkout information for "Sunny Crest Cottage," the name to associated with the Airbnb rental property at 6800 Pillsbury Avenue, Richfield, Minnesota:

From: 78066047004848@lid TheBigMann

¡Hola Rafael!

Esperamos que hayas tenido una excelente visita y hayas disfrutado de tu estancia. Para prepararte para la salida, te sugerimos consultar el Libro de Bienvenida para el procedimiento de salida. Para resumir lo que debes hacer, aquí tienes una lista rápida:

La salida es el 24 de noviembre de 2025 a las 10:00 a. m.
Por favor:
- Lavar los platos sucios
- Colocar las toallas usadas en la bañera
- Cerrar con llave la puerta principal después de salir.

¡Luego, simplemente sal y disfruta del día! ¡Gracias por elegir Sunny Crest Cottage!
Priority: Normal
Status: Read
Platform: Mobile

11/23/2025 6:10:59 PM(UTC-6)

c. Photos with embedded location information retrieved from SILVA's device include the following:

vi. On November 21, 2025 at approximately 4:04 p.m., a photo of SILVA and another individual with a black pirate flag covering his face, identified as URIBE based on other photographs, both wearing various items of jewelry, as seen below:



g. During an interview on March 11, 2026, the victims confirmed that many of the items of jewelry were theirs, including the multi-band pearl bracelet on SILVA's wrist, the diamond shaped silver necklace with purple gems around

SILVA's neck, and the silver-and-gold colored watch on URIBE's wrist.

vii. On November 22, 2025 between approximately 1:09 p.m. and 1:27 p.m., photos of a table with various jewelry and foreign currency laid out on it and SILVA standing near the table with jewelry, with GPS metadata at or around 44.879711, -93.282220, corresponding with 6800 Pillsbury Avenue, Richfield, Minnesota, as seen below:

 

6.

November 21, 2025 – Burglary at 18XX Hunter Lane, Mendota Heights, Minnesota

93.     On December 6, 2025, at approximately 1:00 p.m., the Mendota Heights Police Department was dispatched to 18XX Hunter Lane, Mendota Heights, Minnesota to take a report of a burglary. Upon arrival, officers made contact with the homeowners' son who had been looking after the home, as the homeowners had been moved into assisted living facilities and had not been living at the home for some time. The homeowners' son advised that he was there to check on the home and observed that one of the back doors, a glass patio door, had a large hole in it. The homeowners' son went through most of the house and noted that the master bedroom's walk-in closet had several open drawers, which appeared to have been rummaged through. The homeowners' son spoke with his brother, who stated the interior motion detector had pinged on November 21, 2025 between 5:45 p.m. and 5:49 p.m. The homeowners' son believed this was when the suspects were inside of the home. On March 12, 2026, case agents interviewed the

daughter of the victims. During the interview, the victim's daughter believed that her parents had suffered a loss of approximately $5,000 to $10,000 in stolen jewelry, but was unsure as she was unfamiliar with her mother's jewelry.

<u>November 22, 2025 – Burglary at 51XX Skyline Drive, Edina, Minnesota</u>

94.    On November 22, 2025 at approximately 11:40 a.m., the Edina Police Department was dispatched to a burglary at 51XX Skyline Drive, Edina, Minnesota, after the victims arrived home after being out of town for a couple of days and upon entering noticed a rear window broken at their home. One of the victims reported that no one had been at the residence since November 19, 20925 at approximately 8:00 p.m. Officers located a broken window on the rear side of the residence on the upper deck, and noticed that the screen for the window was laying on the deck below the window. After a walkthrough, the victim and police concluded that money had been taken from a container in the primary walk-in closet, some vintage records were taken, and a preliminary estimate of approximately $60,000 in various jewelry pieces were also missing.

95.    A review of CIFUENTES's blue Apple iPhone 16 assigned call number ending in 407-528-1751 and SILVA's white Apple iPhone 16 assigned call number 612-806-1110 and prior call number 786-969-3360 revealed the following relating to the burglary at 51XX Skyline Drive, Edina, Minnesota:

    a.    The location information, photos, and videos from CIFUENTES' device, as described above, is also pertinent to the burglary of 51XX Skyline Drive, Edina, Minnesota, specifically the following photo of CIFUENTES with items laid out on a table, as seen below:

i.  .

1. During an interview on March 11, 2026, the victim confirmed that many of the items of jewelry, including a matching set of Tiffany earrings and ring, silver keys, a gold-colored pen, and a South African Krugerrand gold coin, were theirs.

b. The location information, photos, and videos from SILVA's device, as described above, is also pertinent to the burglary of 51XX Skyline Drive, Edina, Minnesota, specifically the following photo of SILVA standing in front of a table with various jewelry and holding a set of matching earrings and a ring, as seen below:

i.

1. During an interview on March 11, 2026, the victim confirmed that many of the items of jewelry, to include a matching set of Tiffany earrings and ring held by SILVA, the gold-colored pen, the gold and silver-colored watch on the table, a silver-colored bracelet in the gray box, and the dark draw-string bag were theirs.

**December 3, 2025-December 7, 2025: Wisconsin Trip**

96.     Historical location information from T-Mobile shows that between December 3, 2025 and December 7, 2025, CIFUENTES's phone number 407-528-1751 and SILVA's phone number 612-806-1110 were located in Florida before returning to Wisconsin on December 3, 2025. According to the Waukesha County Sheriff's Department, URIBE's phone number 786-516-6535 was also plotting with CIFUENTES' and SILVA's devices during this time period.  During this trip, an attempted burglary occurred in Fox Point, Wisconsin on December 4, 2025, a second attempted burglary in Ledgeview, Wisconsin on December 5, 2025, and a successful burglary in Verona, Wisconsin on December 6, 2025. CIFUENTES's phone number 407-528-1751, SILVA's phone number 612-806-1110, and URIBE's phone number 786-516-6535, remained in Wisconsin until returning to Florida on December 7, 2025. The travel pattern is consistent with all three devices traveling together in an automobile.

97.     Records provided by Airbnb show that 5114 West Burnham Street, West Milwaukee, Wisconsin, was rented by Guest ID 43296121, under name "Rafael Cure," rafaelcure@yahoo.com, 1-786-720-9443, with a start date of December 3, 2025 for 5 nights and 3 guests.

December 5, 2025 – Burglary of 34XX Weather wood Lane, Ledgeview, Wisconsin

98.     On January 23, 2026, the Brown County Sheriff's Office was assigned to investigate a report of a burglary at 34XX Weatherwood Lane in the town of Ledgeview, Brown County, Wisconsin. The victims were out of town at the time of the burglary and had been since October 23, 2025. The complainant, an individual known to the victims, discovered the burglary when they went inside the residence while house sitting. The complainant immediately called one of the homeowners who asked the complainant to call law enforcement.

99.    The Brown County Sheriff's Office responded to the burglary call. One of the victims reported that they had not been home since October 2025, but had given the complainant permission to house sit. Investigators and the complainant conducted a walkthrough of the home observing items scattered in various locations around the home and ultimately walked down to the basement where the complainant pointed out that the two gun safes had been tampered with but were still locked. Evidence technicians responded to the scene and discovered there were toolmarks along the edges of the doors to the safes. Embedded in the toolmarks on the Remington gun safe was a red substance that was possibly paint transfer from the weapon used to cut the safe. There was a filing cabinet in the unfinished part of the basement. There were several files and papers strewn about on the floor next to this filing cabinet, and there appeared to be toolmarks on the inside of the top drawer. This drawer also appeared to be dented. A red substance was located on a light switch in the basement stairwell next to the garage.

100.    On February 2, 2026, the victim reported that there were items missing from the home including three Crown Royal bags, which contained silver dollars, Sacagawea dollars, Susan B. Anthony dollars, half dollars, dimes, and $2 bills worth approximately $2,000.

101.    A review of CIFUENTES's blue Apple iPhone 16 assigned call number ending in 407-528-1751 and SILVA's white Apple iPhone 16 assigned call number 612-806-1110 and prior call number 786-969-3360 revealed the following:

   a. Location information for CIFUENTES' device include the following:

      i. On December 3, 2025, CIFUENTES' device was located at or around 34.965662, -85.193855, Circle K at 4257 Cloud Springs Road, Ringgold, Georgia at approximately 1:41 a.m.; at or around 43.010367, -87.977570,

5114 West Burnham Street, West Milwaukee, Wisconsin at approximately 7:36 p.m.

ii. On December 4, 2025, CIFUENTES' device was located at or around 43.010367, -87.977570, 5114 West Burnham Street, West Milwaukee, Wisconsin at approximately 9:18 a.m.

1. On December 2, 2025 at approximately 12:40 p.m., CIFUENTES sent the following message to WATAY via TheBigMann account: "Hmno cual el la direccion ??" which translates to, "Brother, what is the address?" TheBigMann account responds, "5114 West Burnham Street, West Milwaukee, Wisconsin 53219, United States," suggesting that WATAY had rented the Airbnb at CIFUENTES's request.

b. Photos discovered on CIFUENTES' device include the following:

i. On December 5, 2025 between approximately 7:45 p.m. and 7:46 p.m., two photos of black safes as seen below, consistent with the Remington safe belonging to the victims at 34XX Weatherwood Lane:

2.

h. During an interview with the victims on March 31, 2026, the victims confirmed the safes within the photos were theirs from inside their home.

ii. On December 5, 2025 at approximately 7:46 p.m., a photo of a masked man, believed to be CIFUENTES, standing in front of a black Remington branded safe, as seen below:



3.

i. During an interview with the victims on March 31, 2026, the victims confirmed that the photo shown above appeared to show an individual taking a photo in front of a safe that appeared consistent with the black Remington safe inside their home.

December 6, 2025 – Burglary at 39XX Caribou Road, Verona, Wisconsin

102. On December 6, 2025, a burglary was reported at 39XX Caribou Road, Verona, Wisconsin. The Dane County Sheriff's Department responded and conducted a follow-up investigation and interviews of the victims. The victims reported that they left town on December 5, 2025, at approximately 1:00 p.m. Investigators determined that on December 6, 2025, at approximately 6:37 p.m., two suspects arrived at a rear window of the residence, parked at Goth Park, and walked through a wooded area to the burglarized residence. At 6:44 p.m., the same two suspects entered the residence through a window that had been broken. At approximately 7:07 p.m., the suspects left the residence, exiting from the same window in which they entered, and appeared to follow their tracks back to Goth Park. The victims reported that an estimated $40,000 to $80,000 in U.S. currency and $150,000 to $200,000 in jewelry was taken from the residence.

103. A review of CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 revealed various photos dated December 6, 2025 between approximately 10:00 p.m. and 11:00 p.m. showing CIFUENTES and URIBE sitting and laying on the floor with cash and a blue and yellow bag. CIFUENTES can be seen holding what appears to be a blue smartphone, as seen below:

1.

      ii. During an interview with the victims on April 24, 2026, the victims confirmed that the bracelet and ring worn by URIBE were confirmed to be the victims' jewelry and the blue bag with CIFUENTES was confirmed as the victim's bag.

104. A review of SILVA's white Apple iPhone 16 assigned call number 612-806-1110 revealed the following relating to the burglary at 39XX Caribou Road, Verona, Wisconsin:

    a. On December 6, 2025 between approximately 9:00 p.m. and 11:30 p.m., photos depicting SILVA, CIFUENTES, and URIBE with cash, jewelry, and a blue and yellow handbag.

    b. At approximately 10:15 p.m. with GPS coordinate metadata of -43.010272, -87.977548, corresponds with 5114 West Burnham Street, West Milwaukee, Wisconsin, and SILVA, CIFUENTES, and URIBE taking a selfie with cash on the floor as seen below:



iii.

4. As described above, records provided by Airbnb indicate that 5114 West Burnham Street, West Milwaukee, Wisconsin was rented using Rafael Cure's Airbnb account starting on December 3, 2025 for five nights and three guests.

iv. On December 2, 2025 at approximately 12:40 p.m., CIFUENTES sent the following message to WATAY via TheBigMann account: "Hmno cual el la direccion ??" which translates to, "Brother, what is the address?" TheBigMann account responds, "5114 West Burnham Street, West Milwaukee, Wisconsin 53219, United States," suggesting that WATAY had rented the Airbnb at CIFUENTES's request.

c. On December 8, 2025, at approximately 12:01 a.m., photos of cash in rubber bands being dumped from a white bag and organized on a clear glass table, as seen below:



v.

105. A review of the contact lists of both CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 and SILVA's white Apple iPhone 16 assigned call number 612-806-1110 showed that each of them had telephone number 305-897-7703, the same number in the above-described WhatsApp call at 7:25 p.m. on October 10, 2025, saved in their devices. CIFUENTES had the call number 305-897-7703 saved as "Amlita" and SILVA had the call number 305-897-7703 saved as "Melita." Based off the listed contact information corresponding with MELITA, case agents believe that call number 305-897-7703 is or was used by MELITA. Law enforcement database checks revealed that call number 305-897-7703 was hosted by T-Mobile during the time of the burglary on October 10, 2025.

106. As described above, CIFUENTES's phone number 407-528-1751, SILVA's phone number 612-806-1110, and URIBE's phone number 786-516-6535 remained in Wisconsin until returning to Florida on December 7, 2025. Records provided by Airbnb show that 6355 Southwest 30th Street, Miami, Florida, was rented by Guest ID 43296121, under the name "Rafael Cure", rafaelcure@yahoo.com, 1-786-720-9443, with a start date of December 8, 2025 for 2 nights and 3 guests.

107. Messages recovered from CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 show that the Airbnb at 6355 Southwest 30th Street, Miami, Florida was facilitated by WATAY and provided to CIFUENTES via TheBigMann Account on December 8, 2025 at approximately 6:39 p.m.. At approximately 6:38 p.m., CIFUENTES wrote: "Dame la dirección," which can be translated to: "Give me the address." WATAY responded: "Hola Rafael, Gracias por elegimos…" which can be translated to "Hi Rafael, thank you for choosing us…" WATAY also sent a follow-up message to CIFUENTES with the wifi connection details. WATAY went on: "6355 Southwest 30th Street, Miami, FL 33155, United States. . . Para entrar 1065," which

can be translated to "To enter 1065." At 6:40 p.m., CIFUENTES wrote: "Pk" and "Vale hmno," which appears to mean: "Okay bro."

**December 10, 2025-December 11, 2025: Final Trip to Wisconsin**

108. As described above, location information from T-Mobile showed that on December 10, 2025, at approximately 7:00 p.m., CIFUENTES's device assigned phone number 407-528-1751 and SILVA's device assigned phone number 612-806-1110 were traveling together as the devices left Florida on Interstate 75 heading north, reaching Wisconsin on December 11, 2025, when CIFUENTES, SILVA, and URIBE were stopped in the Dodge Durango and taken into custody by the Waukesha County Sheriff's Department.

109. Records provided by Airbnb show that 1323 South 85th Street, West Allis, Wisconsin, was rented by Guest ID 43296121, under name "Rafael Cure", rafaelcure@yahoo.com, 1-786-720-9443, with a start date of December 11, 2025 for 2 nights and 3 guests.

110. Messages recovered from CIFUENTES's blue Apple iPhone 16 assigned call number 407-528-1751 show that the Airbnb at 1323 South 85th Street, West Allis, Wisconsin was facilitated by WATAY and provided to CIFUENTES via TheBigMann Account on December 10, 2025 at approximately 9:43 p.m. At approximately 6:10 p.m., CIFUENTES wrote: "Tienes la dirección ?," which can be translated to: "Do you have the address?" WATAY responded: "Confirmado," which can be translated to "Confirmed." CIFUENTES wrote: "Ah yayaha." At 9:43 p.m., WATAY responded: "1323 South 85th Street, West Allis, WI 53214, United States."

**Surveillance of WATAY in Gainesville, Florida**

111. On April 9, 2026, case agents conducted physical surveillance of WATAY at Lux13 Apartments, 1015 NW 21st Avenue, Apartment 119, Gainesville, Florida ("TARGET RESIDENCE") — an apartment building managed by the Collier Companies. On April 9, 2026 at

approximately 1:11 p.m., the Collier Companies advised case agents that WATAY was then living in Unit 119. At about 1:46 p.m., case agents observed a person later identified as WATAY drive a white Toyota Camry (FL: DR27BB), registered to CARLOS BALI, arrive at the apartment building, and park in the parking lot area close to the TARGET RESIDENCE. WATAY was observed wearing glasses, a gray t-shirt, black pants, and gray tennis shoes, and a photo of WATAY, who is depicted on the left side of the photograph, is provided below:


1.

112. After meeting with the two individuals depicted in the photograph in the parking lot, the three of them walked towards the TARGET RESIDENCE. WATAY utilized a key to unlock the door and let himself and the two unidentified men into the apartment. Case agents observed that the door into Apartment 119 was red and was on the first floor of the complex. At about 2:15 p.m., case agents observed WATAY and the two unidentified men in the screened patio of the TARGET RESIDENCE smoking. At about 3:02 p.m., WATAY and the two unidentified men exited the TARGET RESIDENCE, and then all three of the men entered the white 2015 Toyota Camry bearing Florida license plate DR27BB and registered to CARLOS BALI, with WATAY as the driver, and departed the apartment complex. At about 3:04 p.m., case agents also observed a blue Volkswagen IQ4 SUV that had Florida Tag 34EWLE, registered to a "female," LARA NOBUAKI JESUS WATAY at 1015 NW 21st Avenue, Apartment 530, Gainesville, Florida which was parked in the north parking lot area of the TARGET RESIDENCE (The Collier

Companies had informed case agents that WATAY had moved from Apartment 530 to Apartment 119.)

113. On April 21, 2026, case agents from FBI Gainesville conducted physical surveillance of WATAY and the TARGET RESIDENCE. At approximately 9:15 a.m., case agents observed WATAY arrive in a white Toyota Camry and park in the area of the TARGET RESIDENCE. WATAY was observed exiting the Camry with a bag of food and then walking towards the TARGET RESIDENCE.

**August 2025-December 2025: Zelle Payments from CIFUENTES to WATAY**

114. According to a subpoena return from Early Warning Services, LLC, d/b/a Zelle, between the dates of September 10, 2025 and December 11, 2025, CIFUENTES, using his PNC Bank account under the name "LEONARDO QUISEPE GARCIA" with linked telephone number of 407-528-1751, sent approximately 21 electronic Zelle payments to "NOBUAKI WATAY" with linked email address of nobuakiwatay05@gmail.com totaling approximately $18,348.

115. According to the same subpoena return, between August 27, 2025 and October 14, 2025, CIFUENTES using his PNC Bank account under the name "LEONARDO QUISEPE GARCIA" with linked telephone number of 407-528-1751, sent approximately two electronic Zelle payments to "Wl Express Services, Llc" with linked email address of altapinturajnk@hotmail.com, believed to be owned and utilized by WATAY, totaling approximately $1,540.

116. According to the Zelle subpoena, altapinturajnk@gmail.com is also linked to WL Express Services, LLC, WATAY's business, as well as a Capital One bank account with name "Nobuaki Watay." According to open-source research, altapinturajnk@gmail.com is provided as the contact email for WL Express Services, LLC and the phone number is provided on the website

as 561-451-5293 (the "Target Cell Phone"), WATAY's number. The contact information can be found at the following URL: https://wlexpressservicesllcsf.base44.app/Contact.

**CIFUENTES PNC BANK ACCOUNT x6127 ANALYSIS**

117.    Records provided by PNC bank show that PNC bank personal account x6127 was opened on August 13, 2025 under the name LEONARDO M QUISPE GARCIA (the alias of CIFUENTES) as the sole signatory. Between August 13, 2025, and December 10, 2025, there were $33,413.86 in credits made into this account, and $29,720.00 of those credits were ATM deposits and $2,458.53 were Zelle deposits. Two of the eight Zelle deposits were from WATAY ($735 on November 5, 2025) and WL EXPRESS SERVICES LLC ($250 on November 14, 2025). During that same time, there were $33,318.50 in debits from the account. This included $5,335.30 in ATM withdrawals and $26,128.11 in Zelle payments, of which $18,348.00 in Zelle debits were sent to WATAY between September 10, 2025 and December 10, 2025. An additional $1,540 was sent to WATAY'S business account for WL EXPRESS SERVICES LLC.

**Immigration Records**

118.    Upon evaluation of travel and contact records from the United States Department of Homeland Security, case agents determined the following.

   a.    WATAY was last admitted to the United States on September 27, 2017 on a B2 Visitor Visa. He was authorized to remain in the United States until March 26, 2018, but has remained in the United States beyond that date and overstayed his visa. WATAY has a pending benefit application with U.S. Citizenship and Immigration Services (USCIS) and holds a valid work authorization card. As of April 27, 2026, WATAY does not have any lawful immigration status.

b. Luciano Alexis SILVA CIFUENTES was last admitted to the United States on March 21, 2024 at the Miami International Airport Port of Entry. CIFUENTES was admitted on a Visa Waiver valid for 90 days. He was authorized to remain in the United States until June 18, 2024, but has remained in the United States beyond that date, violated the terms, and overstayed his visa.

c. Enjerbet Alejandro ROJAS SILVA was last admitted to the United States on September 22, 2024 at the Miami International Airport Port of Entry.  SILVA was admitted on a Visa Waiver. He was authorized to remain in the United States until December 20, 2024, but has remained in the United States beyond that date, violated the terms, and overstayed his visa.

d. Leandro Felipe PINO URIBE was last admitted to the United States on November 28, 2024 at the Miami International Airport Port of Entry. URIBE was admitted on a Visa Waiver. He was authorized to remain in the United States until February 25, 2025, but has remained in the United States beyond that date, violated the terms, and overstayed his visa.

e. MELITA first entered the country on or about May 6, 2025 on a flight from El Dorado International Airport, Bogota, Colombia to Miami International Airport, Miami, Florida. According to DHS travel records, MELITA remained in the United States until his departure from the country on November 9, 2025 when he flew out of Orlando International Airport, Orlando, Florida to Tocumen International Airport, Panama City, Panama. MELITA departed the United States 98 days after his admission had expired and was identified by DHS as an overstay. DHS records do not indicate any return to the United States by MELITA.

## WATAY's Bank Records

119. Records provided by Truist bank show that on May 17, 2023 business bank account x3522 was opened in the name of WL EXPRESS SERVICES LLC. At the time of account opening, the address for the business was listed as being 2610 NW 84th Avenue, Apartment 205, Miami, Florida. However, the signature card listed only the name of the "depositor" which was also WL EXPRESS SERVICES LLC with an illegible signature. Later, on November 22, 2024, Truist individual bank account x0018 was opened by NOBUAKI WATAY (WATAY), who was the accounts sole signor. Case agents noticed that WATAY's signature on individual account x0018 matches the illegible signature on the WL EXPRESS SERVICES LLC signature card.

120. Between December 5, 2025 and March 2, 2026, WATAY's Truist individual bank account x0018 had approximately $130,345.50 in credits and $130,358.89 in debits, the balance as of March 5, 2026 was $0.00.

121. WATAY's largest credits in total were $67,608.87 received from Zelle, $20,776.22 from WATAY's Truist Account x3522, and $15,002.14 in an Apple Cash Transfer from an account belonging to WATAY. WATAY also received small credits from the following: Venmo Credit: $4,350.40; Cash Deposit: $4,008; Venmo Cashout: $3,779; Hard Rock Bet: $3,528.79; Discover Bank account belonging to WATAY: $2,459; Apple Cash Transfer $1,840.13; and a counter deposit: $1,600. As shown above, these credits the WATAY's account x0018 suggest a high reliance on peer-to-peer transfers for funding. Of the Zelle payments, WATAY received incoming transfers from a number of sources. Of note, WATAY received incoming transfers of the following: Carlos Bali: $10,032.00; NOBUAKI WATAY: $10,029.14; Rafael Cure: $4,434.00; and, Leonardo Quispe Garcia:[5] $1,540.00.

---

5 As noted above, case agents know that "Leonardo Quispe Garcia" is an alias used by CIFUENTES.

122.    WATAY's largest debits in total were $56,386.43 sent to others via Zelle, $45,898.60 transferred to WATAY's business bank account x3522 in the name of WL EXPRESS SERVICES LLC x3522; and, $6,700.11 to GM Financial Payment. WATAY also had smaller debits to the following recipients: Capital One Payment: $3,729.88; Apple Cash: $3,431.63; and, Concora Credit: $1,658.40. Of the Zelle payments, WATAY sent outgoing transfers to a number of recipients. Of note, WATAY sent outgoing transfers to the following: Hector Guzman: $6,795.00; and, Rafael Cure: $1,070.00.

123.    Between January 2, 2025 and February 26, 2026, WATAY's Truist business bank account x3522 in the name of WL EXPRESS SERVICES, LLC had approximately $150,205.29 in credits and $107,081.29 in debits. The balance as of February 26, 2026 was $43,124.00. This account received credits from the following: incoming wire transfers: $54,100.00; transfers from WATAY's Truist individual bank account x0018: $45,898.60; Zelle: $21,521.49; Apple Cash Transfer: $12,662.17; other deposits: $5,880.00; counter deposit: $5,510.00; and, cash deposit: $3,150.00. Of the wire transfers, WATAY's business bank account had received a wire transfer of $24,990.00 USD  on December 18, 2025 and a wire transfer of $20,000.00 USD on December 22, 2025, from sender "Alexandra Minerva Fermin de Gatto AV Arismendi Edif Resd Vista Bahia, Apto 5B, Urb Romulo Gall, Barcelona, Anzoategui, Venezuela" and "Alexandra M Fermin de Gatto, Piso 5, Apto 5B, MCPIO Turistico Lecheria, 6016, Venezuela" to receiver "WL Express Services LLC, 1015 NW 21st Ave, Apt 119, Gainesville, Florida 32609-3448, US," respectively. Of the Zelle payments, WATAY received incoming transfers from a number of sources. Of note, WATAY received incoming transfers of the following: Nobuaki Watay: $17,409.99; and, Hector Guzman $200.00.

124. WATAY's Truist business bank account x3522 in the name of WL EXPRESS SERVICES, LLC also had debits from the following sources in order by total debited: Zelle: $61,238.96; transfer to WATAY's Truist individual bank account x0018: $19,531; cash withdrawal(s): $14,230; GM Financial: $4,529; and, credit card transactions to Apple Card, Chase, Capital One, and Mastercard: $4,197.36. Of the Zelle payments, WATAY sent outgoing transfers to a number of recipients. Of note, WATAY sent outgoing transfers to the following: Nobuaki Discover: $18,088.66; Hector Guzman: $8,339.79; and, Rafael Cure: $1,102.48.

### Florida Secretary of State Records

125. On May 4, 2023, "Articles of Organization for Florida Limited Liability Company" "WL EXPRESS SERVICS LLC" were filed with the Florida Secretary of State. The registered agent listed for the business was NOBUAKI JESUS WATAY LARA. On April 3, 2026, a "2026 Florida Limited Liability Company Annual Report" was filed with the Florida Secretary of State for WL EXPRESS SERVICES LLC. The "Name and Address of Current Registered Agent" is "WATAY LARA, NOBUAKI JESUS" located at "1015 NW 21st Avenue, 119, Gainesville Florida 32609," which is the current address of WATAY, and both the "current principal place of business" and "current mailing address" are both listed as 1015 NW 21st Avenue, Apartment 119, Gainesville, Florida 32609.

### Florida Department of Commerce

126. The Florida Department of Commerce's wage and payroll documentation for WATAY and his business WL EXPRESS SERVICES were requested from the Florida Department of Commerce. On April 24, 2026, the Florida Department of Commerce responded that no records were found for "reemployment assistance or wage information" pertaining to both WATAY and WL EXPRESS SERIVCES. In contrast to this response, Truist business bank

account x3522, in the name of WL EXPRESS SERVICES, was opened May 17, 2023. Between January 2, 2025, and February 26, 2026, approximately $150,000 in credits were deposited into this bank account. These credits were comprised primarily of incoming wires, transfers from WATAY's personal bank account, Zelle payments, Apple Cash payments, and cash deposits. As a result of this credit activity, there was also a substantial amount of debit activity that occurred in the same account. This activity consisted of outgoing Zelle payments, transfers to WATAY's personal bank account, and cash withdrawals. The activity in the WL EXPRESS SERVICES business bank account is indicative of active monetary operations, despite the absence of any reported wage or payroll information at the state level.

127.    On April 14, 2026, the Honorable Nancy Joseph, U.S. Magistrate Judge of the Eastern District of Wisconsin, issued a court order authorizing the installation of a pen register and trap-and-trace (PRTT) device for 561-451-5293 (the "Target Cell Phone"), and the WhatsApp account associated with 561-451-5293 (the "Target Cell Phone"). These order were then served to the Service Provider and WhatsApp on April 15, 2026.

128.    As of April 29, 2026, according to PRTT data, call number 561-451-5293 (the "Target Cell Phone") has been in regular use since the installation of the PRTT device with approximately 2,429 cellular connections including numerous calls with telephone number 786-303-0422 which, according to law enforcement databases, is connected to WATAY's associate and listed Florida emergency contact JOSE QUIVEN RODULFO.[6]

### TECHNICAL BACKGROUND

129.    In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of

---

[6] JOSE QUIVEN, telephone number 786-303-0422, is listed as WATAY's emergency contact on his Florida driver's license information.

cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### Cell-Site Data

130. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

131. Analyzing the incoming and outgoing phone numbers along with the duration, date, and time of who the subject is communicating with through the cellular service provider's records can assist law enforcement in identifying the other party to the call. Running those telephone

numbers through normal investigative steps and searches through open-source public databases can lead to the identification of specific locations such as a hotel, residence, or other type of physical address. When used in conjunction with cell-site and other precision location information, it can lead to identifying and confirming specific addresses or areas of interest where the subject is or has been. This information is also part of the service provider's call detail records (ordinary business records) associated with historical cell-site information and provides a more complete understanding and more accurate view of a subject's historical and perspective location.

### E-911 Phase II / GPS Location Data

132.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

133. Based on my training and experience, I know that cellular providers such as PROVIDER can also collect Timing Advance data, which is also referred to as Per Call Measurement Data ("PCMD"), the "real-time tool" ("RTT"), Network Event Location System (NELOS) data, and True Call data. Timing Advance data estimates the approximate distance of the cellular device from a cellular tower based upon the time it takes for signals to travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

134. Obtaining cell site information that reflects the movement of cellular telephones being used by a subject can provide information beneficial to law enforcement conducting an investigation. More broadly, based upon my training and experience, tracking the location of a subject frequently leads to evidence, including, but not limited to the identification of potential criminal associates, such as criminal co-conspirators, and the identification of physical locations at which unlawful conduct took place. Such information often corroborates and verifies information and investigative leads derived from other investigative techniques, including informants and live and recorded surveillance. Further, certain prospective precision cell site location information could help identify WATAY's current location.

### Pen-Trap Data

135. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber

Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

136. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

137. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

138. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

139. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

140. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

141. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of

the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

# ATTACHMENT A

## Property to Be Searched

1. Records and information associated with the cellular device assigned call number 561-451-5293 (referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber(s) Hector Guzman, that is in the custody or control of  T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 4 Sylvan Way Parsippany, NJ 07054.

2. The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from June 1, 2025 to present:

    i. Names (including subscriber names, user names, and screen names);

    ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii.  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 18, United States Code, Sections 371, 1956, 2314, and 2315 and Title 8, United States Code, Section 1324(a)(1)(A)(iii) involving NOBUAKI WATAY and others known and unknown during the period of June 1, 2025 to the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.